385 So.2d 1081 (1980)
Wilbur R. HANSEN and Peter Kim Van Nymegen, Appellants,
v.
STATE of Florida, Appellee.
No. 79-513.
District Court of Appeal of Florida, Fourth District.
June 18, 1980.
Rehearing Denied August 6, 1980.
*1082 Kenneth R. Mikos of Friedrich, Kersten, Blackwell & Mikos, Fort Lauderdale, and David Roth of Cone, Owen, Wagner, Nugent, *1083 Johnson, Hazouri & Roth, P.A., West Palm Beach, for appellants.
Jim Smith, Atty. Gen., Tallahassee, and Max Rudmann, Asst. Atty., Gen., West Palm Beach, for appellee.
MOORE, Judge.
Appellants entered pleas of nolo contendere, specifically reserving their right to appeal the denial of their motions to suppress. Thereafter, the trial court adjudicated both appellants guilty of the felony offenses of possession of marijuana. Appellants appeal their convictions and we reverse.
On the night January 10, 1978, Detective McDonald of the Fort Lauderdale Police Department had a house in Fort Lauderdale under surveillance pursuant to information received one week earlier from a confidential informant. The informant told the detective that marijuana was being stored in and sold from the house, that a BMW automobile was parked in the driveway of the house, and that appellant-Hansen was involved in drug transactions connected with the house. Detective McDonald had received information from this informant for approximately five years. Although information provided by the informant had purportedly proved reliable in the past, no arrests or warrants had resulted from such information. Prior to his surveillance McDonald discovered that Hansen had a record of arrests and that a BMW automobile matching the description given by the informant was parked in the driveway of the house. Thus, although surveillance began as a result of the information received from the confidential informant, McDonald had no information to indicate an expectation of specific criminal activity by the occupants of the house.
That night McDonald observed two unrecognized occupants exit the house, enter an El Camino, and proceed on Sunrise Boulevard to Interstate 95, where they then proceeded north in the direction of West Palm Beach. McDonald summoned the assistance of Detectives Treutle and Ornorato, who were in a separate vehicle, and both vehicles followed the El Camino. At the Belvedere Road exit of I-95 McDonald met with Officers Hagen and Siciliano of the West Palm Beach Police and set up a monitoring post. Treutle and Ornorato followed the vehicle to a residence at 822 Ardmore Road where the vehicle was parked on the street. They attempted to obtain permission to set up a surveillance post from the residents of 828 Ardmore (the house immediately west of 822 Ardmore), but they were unsuccessful as apparently no one was home. Nonetheless, the officers conducted their surveillance by placing Treutle at the south end of the driveway of the 828 Ardmore residence and Ornorato and the north end. Treutle observed the activities of the residence at 822 1/2 Ardmore (a small cottage behind 822) by looking over a chain link fence and hedge of bushes that served as the border between 822 1/2 and 828. From this vantage point, Treutle observed the activities that actually took place in a driveway and lawn area between 822 and 822 1/2 Ardmore Road. While on the 828 property, Treutle observed an occupant of the El Camino enter the cottage. He then observed two men whom he could not identify leave 822 1/2 Ardmore carrying two "bundles" which were placed on the ground approximately 20 feet from the doorway of 822 1/2. A man then exited the cottage and placed the bundles into the El Camino. Two men then exited the cottage, entered the El Camino and drove off. The record is not clear as to how many persons were involved in these activities.
All of these observations by Treutle were orally communicated to Ornorato, who then communicated them to McDonald, Hagen, and Siciliano via radio. Treutle testified that he suspected the bundles contained marijuana, although he stated that he never actually saw any marijuana.
The El Camino proceeded to a gas station near the corner of Belvedere Road and Parker where it stopped. At this time the activities of the occupants were being monitored by McDonald and another unit comprised of Officers Hagen and Siciliano of the West Palm Beach Police. These officers *1084 had been advised of the situation by McDonald and were privy to Ornorato's radio transmissions. After the El Camino stopped, one of the occupants exited the car and went over to a phone booth and apparently made a call. The El Camino proceeded west on Belvedere, turned around, and came back to the gas station. The occupant who made the call again entered the vehicle and it pulled out of the station. At this time the vehicle stopped. The occupants were arrested by Patrolman Robb Robertson of the West Palm Beach Police pursuant to directions from his superior, Hagen. Robertson was assisted in the arrest by Siciliano. Robertson was also privy to the communications from Treutle and Ornorato at Ardmore Road and had also been advised of the situation by Detective McDonald. Following the arrest Robertson then conducted a search of the El Camino. The search produced a ten pound parcel of marijuana wrapped in a garbage bag, a twenty pound parcel of marijuana located inside a cardboard box, a briefcase containing some weighing scales, and a briefcase containing about $8,000 in U.S. currency.
The sole issue in this case is whether there was probable cause to make an arrest of the appellants and conduct the subsequent search of their vehicle. In determining the existence of probable cause in this case, we must analyze the quantum of information as it existed in the minds of the Fort Lauderdale Police. The information and knowledge of the West Palm Beach Police, derived from their Fort Lauderdale colleagues, must also stand or fall under this same analysis.
In suspecting the Fort Lauderdale house as an area of criminal activity, Detective McDonald relied upon information from an unidentified informant. The informant told McDoanld that Hansen, who seemingly resided at the house, was involved in drug transactions and the storage of marijuana at the house. The informant never proffered any specific information relating to past occurrences or future possibilities of any identifiable drug transactions. All the informant told McDonald was that the he somehow knew these facts to be true. At the suppression hearing McDonald did not provide any specifics as to the reliability of his informant in the past, nor did he provide the trial court with any underlying rationale that might have led him to believe that a specific drug transaction was about to take place. All that is reflected in the record is (1) McDonald believed the informant to be reliable (without articulating any specifics), (2) the informant told him that at some vague time in the past marijuana was stored and possibly sold from the Fort Lauderdale house, and therefore, (3) McDonald suspected criminal activity. The house in question was then placed under surveillance. The record reflects no attempt by the police to obtain a search warrant during the week between the time McDonald received his information and the date of arrest. While surveilling the house McDonald observed two unidentified and unrecognizable males depart the premises, enter an unknown vehicle, and drive away. These facts are insufficient to constitute probable cause that a crime was about to be committed.
In Olivera v. State, 315 So.2d 487 (Fla. 2nd DCA 1975), the Court held that, even assuming that exigent circumstances necessary for a search without a warrant exist, the probable cause requirements for a warrantless search are not less than those for the issuance of a search warrant. Thus, a police officer must have information that indicates with particularity the place where criminal activity is afoot, the persons involved, and the nature of the offense. When the officer relies on information from a third party these same requirements of particularity, probability and reliability still apply. Such a receipt of third party information exists in this case. In Aguilar v. Texas[1], 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court affirmed the use of hearsay information as a basis of probable cause for a warrant. The *1085 Court stated, however, that the issuing magistrate must be informed of some underlying circumstances from which the informant concluded that his information was correct, and the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed[2], was "credible", and his information reliable. The transcript of the suppression hearing in the present case reveals nothing other than McDonald's general assertions of belief in his informant and that the informant told him of some nonspecific drug trafficking. There are no statements of names, dates, transactions, etc., that would give McDonald a basis for establishing his informant's prior track record for reliability and his present credibility.
This case presents a scenario similar to that of Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) in which the police arrested the petitioner based on generalized "information", "reports", "police pictures" and the information of unnamed informants. After the arrest, the petitioner's auto was seized and searched and incriminating evidence was found. The Supreme Court reversed the conviction stating that a generalized belief or suspicion that a person is involved in a criminal activity is insufficient to validate an arrest. There must be an underlying and articulable basis to establish probable cause. Shepard v. State, 319 So.2d 127 (Fla. 1st DCA 1975)[3], represents this same principle; that the police cannot lawfully transform their mere suspicions into action that involves searches or seizures of individuals.
In Raffield v. State, 351 So.2d 945 (Fla. 1977), the Court held that where the police had placed a farm under surveillance in early December and had made no attempt to procure a warrant, a warrantless search of the defendant's farm on December 24th was not reasonable, even if exigent circumstances and probable cause had existed on that date. Although no search of the appellant's purported residence occurred in this case, the principle of Raffield should apply nonetheless. The record reveals that McDonald received his information concerning the house and appellant-Hansen on January 3rd. The police had not attempted to procure a warrant the following week and elected instead to "tail" the appellants on the night of January 10th, without any information as to any criminal activities that would or even might transpire.
The foregoing analysis of the facts and applicable law clearly indicates that the Fort Lauderdale Police did not have probable cause to arrest appellants for any activities in Broward County on the night of January 10. They proceeded to follow the appellants to Palm Beach County under what could only be called a suspicion. In fact, any "suspicion" which the police could have had was only a general suspicion of the appellants' possible criminal character and not a well founded suspicion of actual criminal conduct. It must be remembered that McDonald did not even know who the exact occupants of the vehicle were. Thus, even a reasonable belief in Hansen's criminality could not suffice to validate further police action since both the vehicle and its occupants were unknown to McDonald. Assuming, arguendo, that the Fort Lauderdale Police had a sufficiently reasonable suspicion of the appellants' criminal activity to justify a crossing of county lines to continue their surveillance, we must then consider the observations of the police at the Ardmore Road residence. Two factors should be kept in mind: (1) the Fort Lauderdale police were completely out of their lawful jurisdiction, and (2) there was nothing to indicate or support a "hot pursuit" theory so as to give the police extra jurisdictional powers under Section 901.25 Florida Statutes (1978).
*1086 We reject the State's contention of a "plain view" theory to justify Treutle and Ornorato's observations from 828 Ardmore Road. The "plain view" doctrine as defined in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) consists of three basic requirements that must be satisfied in order for a valid seizure of evidence to result from a plain view observation conducted without a warrant. These requirements are aptly set forth in Pomerantz v. State, 372 So.2d 104, 110 (Fla. 3rd DCA 1979):
In a long line of cases, the Florida and federal courts have held that it is not a search for the police to discover evidence in plain sight. The warrantless seizure of such evidence is constitutionally permissible providing three requirements are met: (1) the police must observe the evidence in plain sight without the benefit of a search [i.e., without invading one's reasonable expectation of privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation, and (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime. [citations omitted].
Even if we can assume that the appellants had no reasonable expectation of privacy where they were located[4], and that the police had a right to be on the property at 828 Ardmore[5], the police did not have probable cause to believe that the "bundles" they observed were the "fruits", "instrumentalities", or "evidence" of a crime. Treutle testified that he never saw any marijuana, only that he suspected that the bundles contained marijuana. Recent decisions have held that a police officer's observation of the outer packing of a suspected parcel of marijuana, standing alone, is insufficient to constitute probable cause. Harris v. State, 352 So.2d 1269, 1270 (Fla. 2nd DCA 1977); Carr v. State, 353 So.2d 958, 959 (Fla. 2nd DCA 1978). The mere observation of such parcels could at most raise a suspicion of wrongdoing. Additional, specific information was needed to escalate this suspicion to probable cause. As previously stated, the record here indicates that none of the officers had any information concerning specific drug transactions. Furthermore, there is nothing to indicate that the parcels were packaged in a manner that is customary to marijuana packaging in general. This being the case, and no marijuana being plainly visible, the police did not have the requisite probable cause to make an arrest or search.
The arrest in this case was effectuated by the West Palm Beach Police who were acting under the advice of Detective McDonald and the radio transmissions from Officer Ornorato. Although a police officer may make a warrantless arrest without firsthand knowledge of a crime if he receives a communication from another officer who has probable cause, a deficiency in initial probable cause cannot be rectified by the products of a search conducted after arrest. Compare, McRae v. State, 245 So.2d 133 (Fla. 1st DCA 1971); Crawford v. State, 334 So.2d 141 (Fla. 3rd DCA 1976); State v. Harrington, 307 So.2d 466 (Fla. 2nd DCA 1974); and United States v. Trabucco, 424 F.2d 1311 (5th Cir.1970) with Whitely v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). The validity of the arrest in this case is dependent upon the existence of probable cause within the minds of Treutle and Ornorato since they *1087 are the only persons with personal knowledge of the activities at Ardmore Road. Since Treutle and Ornorato did not have probable cause, based upon their observations of the activities at Ardmore Road, the arrest which was based upon the communication of their personal knowledge to the arresting officers was invalid, and the subsequent search of the vehicle violated the appellants' fourth amendment rights.
Accordingly, the judgments of convictions and sentences and the order denying the motion to suppress are reversed. This cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
DOWNEY and ANSTEAD, JJ., concur.
NOTES
[1] See also, Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 54 S.Ct. 11, 78 L.Ed. 159 (1933).
[2] In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), information given by an unnamed and unidentified informant was held sufficient to support a warrantless arrest under exigent circumstances. In Draper, however, the informant had a demonstrably excellent prior record of reliability and there was an underlying factual basis for his present accuracy. His past reliability and present accuracy were supported by specific details of fact.
[3] See also, Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
[4] See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) and Fixel v. Wainwright, 492 F.2d 480 (5th Cir.1974) expressly declaring a right of privacy in a back yard. While it is apparent that neither of the appellants resided at 822 1/2 Ardmore Road, their testimony that they were "houseguests" was not disputed. As noted in Katz, the realm of "privacy" is not a static concept. "Privacy" can be anywhere as long as the defendant has a reasonable and justifiable expectation so as to warrant protection.
[5] This is a doubtful proposition, since Officers Treutle and Ornorato, who were beyond their territorial jurisdiction and not in "hot pursuit", had no greater right or privilege than other ordinary citizens. An ordinary citizen could only be considered a trespasser if they were on the premises of 828 Ardmore without the consent of the owners.