544 So.2d 1173 (1989)
Kenneth Matthew TONGUE, Appellant,
v.
STATE of Florida, Appellee.
No. 88-592.
District Court of Appeal of Florida, Fifth District.
June 15, 1989.
James B. Gibson, Public Defender, and Brynn Newton, Asst. Public Defender, Daytona Beach, for appellant.
*1174 Robert A. Butterworth, Atty. Gen., Tallahassee, and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
The appellant, Kenneth Matthew Tongue, was convicted of second degree murder. He appeals the trial court's denial of his motions to suppress evidence and inculpatory statements. He argues that his arrest by Maryland police officers was illegal because it was based on erroneous information, and therefore any evidence produced by the subsequent search of his person and the vehicle he was driving should have been suppressed. He also argues that he had "standing" to contest his arrest[1] and the search of the vehicle he was driving.
The evidence at trial showed that Tongue was apprehended through a chain of bizarre circumstances. He was detained at an automated toll booth in Maryland while driving an automobile belonging to the deceased victim, Steven Rosa. Tongue did not have money to pay the toll, and had no driver's license or registration to serve as identification for the purpose of completing the pledge card. When asked his name Tongue identified himself as one Thomas Louis Noll. A computer check reported that Noll's Pennsylvania driver's license had been suspended, and Tongue, alias Noll, was thereupon arrested for driving with a suspended license. Tongue was given the standard Miranda warnings, and then asked to empty his pockets. Credit cards belonging to Steven Rosa were among the items Tongue emptied from his pocket. Tongue said the cards and the car belonged to a friend. The car was impounded and inventoried. Rosa's identification was found in the front seat, and the body in the trunk. Tongue was again read his Miranda rights, and he shortly thereafter confessed to strangling Rosa in Florida and placing his body in the trunk.
A subsequent check of Noll's driving record in Pennsylvania established that the suspension of his license had been prematurely entered into the computer and, in fact, the license was not suspended at the time of the check. Based upon this discovery, Tongue contends on appeal that his arrest was illegal and that the evidence seized from the car and the incriminating statements to the arresting officer should have been suppressed under Albo v. State, 477 So.2d 1071 (Fla. 3d DCA 1985). In Albo evidence was seized as a result of Albo's arrest for driving on a suspended license. In fact, the license had been reinstated at the time of the arrest. The Third District, relying on the exclusionary rule and seeking to deter police reliance on information they could and should have corrected, reversed the trial court's denial of Albo's motion to suppress. It should be noted, however, that there was no question as to Albo's legal possession of the automobile.
Tongue also relies on State v. Scott, 481 So.2d 40 (Fla. 3d DCA 1985), which involved contraband discovered in the search of a car which was driven, but not owned, by Scott. The facts recited in Scott are skeletal, at best, but we assume that Scott was lawfully in control of the automobile at the time, since the Third District opinion relies on Justice Terrell's opinion in Kersey v. State, 58 So.2d 155 (Fla. 1952) and on Hansen v. State, 385 So.2d 1081 (Fla. 4th DCA 1980), cert. denied, 392 So.2d 1379 (Fla. 1980). Neither Kersey nor Hansen involved the seizure and search of a stolen vehicle, the factual scenario of the instant case.
There has been no challenge to Officer Panowitz's right to initially detain Tongue, ascertain his identity[2] and obtain from him a written "pledge" to pay the toll in the future. In light of the fact that the initial period of detention to obtain the pledge is unchallenged and was apparently proper, Tongue cannot be heard to complain *1175 about the officer's decision to continue that detention when Tongue himself prompted the need for it by using a fictitious name. We need not speculate whether under Maryland law, and absent the erroneous computer information, Tongue's earlier failure to produce a valid license or use of a fictitious name would alone constitute an independent crime for which Tongue could be arrested.[3] It is enough that the continued detention prompted by Tongue's misrepresentations did not constitute an unreasonable seizure of his person under the fourth amendment. Having concluded that the period of custodial detention was reasonable, the only remaining argument available to Tongue is that the officers exceeded the permissible scope of search incident to their Terry detention of his person.
We believe the controlling principle of law applicable to this case is to be found in Rakas v. Illinois, 439 U.S. 128, 140, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978):
A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.
439 U.S. at 134, 99 S.Ct. at 425. It has been held that an automobile thief cannot challenge an unlawful search or seizure of the stolen car in his possession. Cameron v. State, 112 So.2d 864 (Fla. 1st DCA 1959). As stated in footnote 12 of Rakas:
Obviously, however, a "legitimate" expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as "legitimate." His presence, in the words of Jones [v. United States], 362 U.S. 257, at 267, 80 S.Ct. [725], at 734 [4 L.Ed.2d 697 (1960)], is "wrongful"; his expectation is not "one that society is prepared to recognize as `reasonable.'" Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. [507], at 516 [19 L.Ed.2d 576 (1967)] (Harlan, J., concurring).
In the instant case, no physical evidence was taken from Tongue's person. He had no legitimate expectation of privacy in the stolen vehicle, nor any legal right to remove it from the scene even had he not been personally detained or arrested. Thus, no constitutionally protected interest was infringed by the search.
Since Tongue had no legitimate privacy interests infringed by the search of Rosa's car, he cannot complain in regard to the discovery of Rosa's body. That discovery provided probable cause for Tongue's valid arrest on suspicion of murder, after which he was again Mirandized and confessed to that murder. That confession was admissible against him because it was the fruit of a valid arrest following a valid detention, and there has been no showing that the confession was otherwise coerced or involuntary. See Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).
Accordingly, the trial court did not err in denying the appellant's motion to suppress.
AFFIRMED.
DAUKSCH, COBB and GOSHORN, JJ., concur.
NOTES
[1] It goes without saying that any defendant always has standing to contest the lawfulness of seizure of his person because of the liberty interest involved. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] See Harper v. State, 532 So.2d 1091 (Fla.3d DCA 1988).
[3] See § 843.02, Fla. Stat. (1987); Steele v. State, 537 So.2d 711 (Fla. 5th DCA 1989).