DAVIS, Judge.
The State challenges the trial court order granting D.D.D.’s motion to suppress physical evidence related to several charges against D.D.D. We reverse.
The State charged D.D.D. with possession of a firearm by a minor, carrying a concealed weapon, possession of a controlled substance, and possession of a legend drug without a prescription. These charges stem from an incident in which an officer stopped D.D.D. after the officer received information from police dispatch that an individual, generally described as an eleven- to twelve-year-old boy wearing dark pants and a light shirt, was seen in a certain area in possession of a handgun. Prior to the stop, when D.D.D. saw the officer in his marked patrol car, he walked behind a tree and dropped a silver object. The officer could not see what the object was but surmised that it was heavy because dust kicked up when it hit the ground. D.D.D. then walked away from the officer in the opposite direction than he originally had been traveling. The officer called D.D.D. over to the patrol car and conducted a pat-down search that yielded a sheathed knife hanging on a chain around D.D.D.’s neck. The officer and D.D.D. then walked over to the tree and retrieved the gun. Before D.D.D. was placed in a patrol car, he was again searched, and drugs were found in his shoes.
Prior to trial, D.D.D. moved to suppress the physical evidence and his statements, and the trial court granted the motion, concluding that the stop of D.D.D. was illegal because the officer did not have the necessary reasonable suspicion.
When reviewing a trial court’s ruling on a motion to suppress, the trial court’s factual findings must be affirmed if supported by competent, substantial evidence, Caso v. State, 524 So.2d 422 (Fla.1988), while the trial court’s application of the law to those facts is reviewed de novo, Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).
Here, the trial court’s findings that the officer saw D.D.D. walking down the street, witnessed him drop something heavy behind a tree, stopped and searched him, and then retrieved the gun were supported by the testimony presented at the suppression hearing. We, however, do not agree with the trial court’s application of the law to those facts. While we agree with the trial court that this was an investigatory stop, we conclude that the officer possessed a reasonable suspicion that D.D.D. had committed a crime. See Pop *1182 ple v. State, 626 So.2d 185, 186 (Fla.1993) (“The second level of police-citizen encounters involves an investigatory stop .... At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime.”).
The officer had received a report from his dispatcher that a juvenile, approximately age eleven or twelve, wearing dark pants and a light shirt, was in the area of the 3400 block of Fifty-First Avenue Terrace West and was possibly in possession of a handgun. The officer reached the location within two minutes of the dispatch report and saw D.D.D., who matched the dispatch description, walking along the shoulder of the road. When he saw the officer, D.D.D. dropped a heavy, silver object behind a tree and began to walk away from the officer. Based on these facts, we conclude that the officer had the requisite “well-founded, articulable suspicion” to perform an investigatory stop. See id. (“In order not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.”).
We note that because it concluded that the stop was improper based on the officer’s knowledge at the time, the trial court did not make a specific finding as to whether the dispatch report received by the officer was citizen Information or an anonymous tip. The distinction can be important because “[t]ips from known reliable informants, such as an identifiable citizen who observes criminal conduct and reports it, along with his own identity to the police, will almost invariably be found sufficient to justify police action.” J.L. v. State, 727 So.2d 204, 206 (Fla.1999). On the other hand, anonymous tips referring to activity that is occurring at the time the tip is made that provide only “ ‘innocent details of identification’ ” are generally considered to be less reliable and require some corroboration to provide the foundation for reasonable suspicion to stop. Id. at 206 (quoting Butts v. State, 644 So.2d 605, 606 (Fla. 1st DCA 1994)). “[F]or these types of tips ..., the independent police investigation would have to uncover something more than just a verification of the innocent details. The police must observe additional suspicious circumstances as a result of the independent investigation.” Id. at 207.
Even if we considered the tip here to be the latter type, it would not change our analysis. The arresting officer here observed D.D.D., upon seeing the officer in his marked patrol car, go behind a tree and drop a heavy, silver object. D.D.D. then turned and walked away from the officer in the opposite direction than he had been traveling when the officer first saw him. These observations of the officer combined with the information provided to him from dispatch provided the officer with the reasonable suspicion necessary to conduct a stop. See J.L., 727 So.2d at 207.
However, we agree with the trial court that the pat-down search of D.D.D. was not proper. See Owens v. State, 854 So.2d 737, 740 (Fla. 2d DCA 2003) (“A pat-down for weapons is permissible only when the officer has a reasonable suspicion that the defendant is armed and dangerous.”). Although the dispatcher informed the officer that the suspect was in possession of a firearm, the officer testified that he believed he saw D.D.D. drop the gun behind a tree. Therefore, it was not reasonable for the officer to suspect that D.D.D. was armed. We recognize that it was ultimately discovered that D.D.D. was armed with a knife, but at the time of the pat-down the officer was not in possession of any information that would reasonably lead him to *1183 believe D.D.D. was carrying a knife — or any other weapon.
The impropriety of the pat-down search, however, does not negate the lawfulness of the initial stop, nor does it taint D.D.D.’s arrest. Because the officer had a reasonable suspicion that D.D.D. had committed a crime, he was well within his authority to stop and detain him and even to bring him over to the tree to retrieve the gun. Once the officer discovered the gun, he had the probable cause necessary to arrest D.D.D. See Popple, 626 So.2d at 186 (“[A]n arrest ... must be supported by probable cause that a crime has been or is being committed.”). Once the officer effected the arrest, a search incident to that arrest would have revealed the knife. Accordingly, although the pat-down search was improper at the time it was conducted, the knife would have inevitably been discovered. See A.J.M. v. State, 746 So.2d 1222, 1225 (Fla. 3d DCA 1999) (“Florida has adopted the inevitable discovery doctrine which provides that ‘evidence obtained as the result of unconstitutional police procedure may still be admissible provided the evidence would ultimately have been discovered by legal means.’ ” (quoting Maulden v. State, 617 So.2d 298, 301 (Fla.1993))).
In conclusion, because the initial stop and subsequent arrest of D.D.D. were proper, we reverse and remand for further proceedings.
Reversed and remanded.
SALCINES and LaROSE, JJ., Concur.