963 So.2d 765 (2007)
The STATE of Florida, Appellant,
v.
William R. LENNON, Appellee.
No. 3D06-2532.
District Court of Appeal of Florida, Third District.
July 5, 2007.
Rehearing and Rehearing Denied September 26, 2007.
*767 Bill McCollum, Attorney General, and Olga L. Villa, Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Assistant Public Defender and Jacqueline Delgado and Kristen E. Mueller, Certified Legal Interns, for appellee.
Before GREEN, SHEPHERD, and LAGOA, JJ.
Rehearing and Rehearing En Banc Denied September 26, 2007.
LAGOA, Judge.
The State appeals an order granting defendant William R. Lennon's ("Lennon") motion to suppress physical evidence and statements. Because the police officer had reasonable suspicion to make an investigatory stop and because Lennon lacked standing to challenge the seizure of the stolen jet ski and trailer, we reverse the suppression order.
I. FACTUAL AND PROCEDURAL HISTORY
Lennon was charged with one count of grand theft in the third degree involving a jet ski and trailer. Lennon filed a motion to suppress contending that because there was no reasonable suspicion to detain him and conduct an investigatory stop, all physical evidence and statements obtained from the investigatory stop should be suppressed.
At the hearing on Lennon's motion to suppress, Officer Castaneda testified on behalf of the State. Castaneda testified that at 9:05 p.m. on August 16, 2005, 911 received information that two men were selling a jet ski and a trailer on the side of the road at southwest 181st street and 97th avenue for a "very good price." Castaneda testified this activity was illegal pursuant to a Miami-Dade County ordinance prohibiting any vehicles from being parked and displayed for sale on public streets.
Officer Castaneda responded in a marked police vehicle to the exact location provided by the tip and saw a van, jet ski, and trailer parked on the side of the public road. Lennon was standing next to the van holding a bicycle when Officer Castaneda parked his vehicle next to the van. As Castaneda approached, Lennon rode five to seven feet away from the scene on his bicycle. At that point, Officer Castaneda told Lennon "stop, I need to talk to you." Lennon stopped, and Officer Castaneda asked for his driver's license. After Lennon told Officer Castaneda that the van, jet ski and trailer belonged to him, Castaneda asked Lennon whether he had documentation of ownership, and Lennon responded that he did not have any to give him. Lennon told Castaneda that he owned the jet ski and trailer for a period of six months and then consented to an inspection of the jet ski and trailer. During this time frame, Lennon's co-defendant approached Officer Castaneda and Lennon and admitted that they were selling the jet ski and trailer.
Officer Castaneda checked the VIN for the jet ski[1] and after running the VIN number discovered that both the jet ski and trailer had been stolen six days earlier. After determining that the jet ski was stolen, Castaneda approached another officer at the scene to make contact with the registered owner who lived nearby and *768 obtain a description of the jet ski and trailer. When the second officer confirmed that the registered owner's description matched that of the jet ski and trailer offered for sale by Lennon, he was placed under arrest.
Following the hearing on the motion to suppress, the trial court entered a written order finding that Officer Castaneda "did not make any independent observations that were indicative of criminal activity and had no other facts upon which he could articulate a well-founded basis for suspicion of criminal activity." Based upon these findings, the trial court concluded that Officer Castaneda "did not have reasonable suspicion to detain Lennon" and granted the motion to suppress "all of the evidence, including the jet ski, trailer, statements made by Lennon, and the officer's identification" of Lennon.
II. STANDARD OF REVIEW
In reviewing a trial court's ruling on a motion to suppress, we must affirm a trial court's factual findings if supported by competent, substantial evidence. Hicks v. State, 929 So.2d 13, 15 (Fla. 2d DCA 2006)(quoting State v. D.D.D., 908 So.2d 1180, 1181 (Fla. 2d DCA 2005)). However, application of the law to those facts and any legal conclusions are reviewed de novo. Id.
III. ANALYSIS
An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "`Reasonable suspicion' is a less demanding standard than that for probable cause, and `considerably less than proof of wrongdoing by preponderance of the evidence.'" State v. Gonzalez, 682 So.2d 1168, 1170 (Fla. 3d DCA 1996).
The standards enunciated in Terry were codified in Florida's Stop and Frisk Law. Section 901.151(2), Fla. Stat. (2006), provides, in relevant part:
Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.
An officer, therefore, may detain a person in order to determine identity and circumstance when that officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. Gonzalez, 682 So.2d at 1170 (Fla. 3d DCA 1996).
In determining whether a police officer possesses a reasonable suspicion to justify an investigatory stop, the court must consider the totality of the circumstances viewed in light of a police officer's experience and background. See Hernandez v. State, 784 So.2d 1124, 1126 (Fla. 3d DCA 1999); Brown v. State, 592 So.2d 1237, 1238 (Fla. 1st DCA 1992); Moore v. State, 561 So.2d 625, 626 (Fla. 1st DCA 1990). Some of the factors a police officer may evaluate to reasonably suggest the possibility, existence, or imminence of criminal activity are:
The time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation *769 of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge. To this list may be added, the factor of flight.

Hernandez, 784 So.2d at 1126 (quoting State v. Bell, 382 So.2d 119 (Fla. 3d DCA 1980)). Although flight alone is not sufficient to create reasonable suspicion, "flight can be considered when there are other suspicious circumstances." Hernandez, 784 So.2d at 1127. Indeed, "flight at the sight of an approaching police officer is a suspicious circumstance which, when added to other suspicious circumstances, may justify the belief that the defendant was engaged in criminal activity" warranting an investigatory stop. Id. (emphasis in original).
Here, under the totality of the circumstances, we find that Officer Castaneda had reasonable suspicion to lawfully detain Lennon. Once Officer Castaneda received the information from the dispatcher that two men were attempting to sell a jet ski and trailer on a public road, he proceeded immediately to the detailed location. Upon arriving at the specific location, Castaneda observed Lennon standing next to a van, jet ski, and trailer, all of which were parked on the side of a public road, at night, in a location not near the vicinity of water. This observation, along with the tip, indicated to Castaneda a possible violation of a Miami-Dade County ordinance prohibiting the display of any vehicles for sale on a public street. Additionally, when Lennon saw Officer Castaneda park his car, he fled on a bicycle. In light of the already suspicious circumstances in this casethe possible violation of an ordinance, the time of day plus the anonymous tip, the attempt by Lennon to flee may be considered in deciding whether there existed reasonable suspicion. Indeed, taken as a whole, these factors were sufficient to lead Officer Castaneda to have a reasonable suspicion that a crime may have been, was, or was about to be committed so as to justify further investigation. As this Court has previously stated:
The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his [or her] shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.
Gonzalez, 682 So.2d at 1171 (quoting Adams v. Williams, 407 U.S. 143, 145-146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)). We, therefore, find that the stop was constitutional, and that the trial court erred in suppressing all evidence and statements obtained as a result of the investigatory stop.
We write further to address the issue of Lennon's standing to challenge the seizure of the stolen items.[2] Although not presented below by the State, the issue of standing may be properly addressed for the first time on appeal. See McCauley v. State, 842 So.2d 897, 900 (Fla. 2d DCA 2003)("the concept of standing has been subsumed into Fourth Amendment issues *770 and can be raised for the first time on appeal."). On appeal, the State argues that Lennon did not have a reasonable expectation of privacy in either the jet ski or trailer as he did not lawfully possess them. We agree. A defendant challenging a search must show a proprietary or possessory interest in the area of search or that there are other factors which create an expectation of privacy which society is willing to recognize as reasonable. Singleton, 595 So.2d at 45 (Fla.1992). As the Second District explained in Hicks v. State, 929 So.2d 13, 16 (Fla. 2d DCA 2006):
A search violates a defendant's Fourth Amendment rights only if (1) a defendant demonstrates that he or she had an actual, subjective expectation of privacy in the property searched and (2) a defendant establishes that society would recognize that subjective expectation as objectively reasonable.
In Hicks, the Second District held that the defendant failed to establish a reasonable expectation of privacy in a stolen laptop computer which was seized from his vehicle, and therefore could not contest the search of the laptop's files. Id. at 19. See also Tongue v. State, 544 So.2d 1173 (Fla. 5th DCA 1989)(no legitimate expectation of privacy in stolen vehicle). "The Fourth Amendment does not protect a defendant from a warrantless search of property that he stole, because regardless of whether he expects to maintain privacy in the contents of the stolen property, such an expectation is not one that `society is prepared to accept as reasonable.'" Hicks, 929 So.2d at 17 (quoting United States v. Caymen, 404 F.3d 1196, 1200 (9th Cir.2005)).
Similarly, Lennon had no expectation of privacy in the stolen jet ski and trailer as he had neither a possessory or ownership interest in them nor is society prepared to accept such an expectation of privacy as reasonable. Lennon, therefore, lacked standing to complain of their seizure.
IV. CONCLUSION
For the foregoing reasons, we reverse the trial court's order granting the motion to suppress all evidence, and remand for proceedings consistent with this opinion.
NOTES
[1] Castaneda testified that the VIN for the jet ski was in plain view.
[2] The State does not challengenor could itLennon's standing to challenge the stop of his person. See State v. Singleton, 595 So.2d 44, 45 (Fla.1992)(a defendant has "standing to challenge the stop of his person. The search of a person and the search of an area or a vehicle are different.").