WELLS, Judge.
 

 The State appeals from an order granting defendant Ceasar Reyes’ motion to
 
 *48
 
 suppress. Reyes was charged with third degree grand theft of a motor scooter and giving a false name. He moved to suppress the seized evidence relating to both crimes arguing that there was nothing about his behavior that would objectively justify the investigatory stop that led to discovery of that evidence. While we agree that the evidence regarding Reyes’ identity was properly suppressed, the evidence regarding the alleged theft of the motor scooter was not.
 

 The sole witness called at the hearing on Reyes’ motion to suppress was Officer Carlos Cuellar, the arresting officer. According to Officer Cuellar, at approximately 4:30 a.m. on Wednesday, September 26, 2007, while on patrol in the area of 5th Street and Meridian Avenue in Miami Beach, he observed Reyes pushing a red motor scooter across a busy intersection. Officer Cuellar approached Reyes and asked if he needed help. Reyes declined assistance. Officer Cuellar noticed as he approached Reyes to offer help, that there was no key in the scooter’s ignition. He also noticed that Reyes was sweating and acting nervously. Cuellar, on patrol in this mixed residential/commercial area because of recent reports of burglaries and scooter thefts, asked Reyes, who had been coming from the direction of a scooter store, for identification. Reyes denied having any identification with him but told Officer Cuellar that his name was Caesar Rodriguez. Upon further questioning, Reyes advised Officer Cuellar that he did not have a key for the scooter but that the scooter belonged to a friend named Hugo, whose last name and address he did not know.
 

 At this point, Officer Cuellar, suspecting that the scooter might be stolen, and fearing that Reyes might be armed, conducted a pat-down search of Reyes. During this search, Officer Cuellar discovered a Florida driver’s license with Reyes’ real name and photograph. Officer Cuellar then read Reyes his Miranda
 
 [1]
 
 rights. While this was transpiring, another officer arrived at the scene and checked the scooter’s vehicle identification number (“VIN”), which confirmed that a scooter store owned the scooter in Reyes’ possession. Reyes was placed under arrest.
 

 Based on this testimony, the trial court concluded that no stop, detention, or arrest was justified and suppressed all evidence regarding Reyes’ identity and the scooter’s ownership. While we agree that the pat-down search exceeded the scope authorized by section 901.151 of the Florida Statutes and that the evidence seized during that search was properly suppressed, we cannot agree that no stop, detention or arrest was justified and that all of the evidence seized during Reyes’ stop and detention must be suppressed.
 

 The Florida Supreme Court recognizes three types of police-citizen encounters.
 
 Golphin v. State,
 
 945 So.2d 1174, 1180 (Fla.2006);
 
 Popple v. State,
 
 626 So.2d 185, 186 (Fla.1993). The first is a consensual encounter involving minimal police contact during which a citizen may either comply with an officer’s requests or ignore them. These encounters “do not invoke constitutional safeguards.”
 
 Golphin,
 
 945 So.2d at 1180;
 
 Popple,
 
 626 So.2d at 186. The second is an investigatory stop during which an officer may temporarily detain a citizen if the stop is supported by a reasonable suspicion “that a person has committed, is committing, or is about to commit a crime.”
 
 Popple,
 
 626 So.2d at 186;
 
 Phillips v. State,
 
 781 So.2d 477, 479 (Fla. 3d DCA 2001) (confirming that to justify an investigatory stop, a police officer must have a well-founded, artic-
 
 *49
 
 ulable suspicion that a person has committed, is committing or is about to commit a crime). The third is “an arrest which must be supported by probable cause that a crime has been or is being committed.”
 
 Popple,
 
 626 So.2d at 186.
 

 The facts here confirm that Officer Cuellar’s first approach to Reyes to ascertain whether he could render assistance was purely a consensual encounter from which Reyes was free to walk away. However, this encounter evolved into an investigatory stop when, upon approaching Reyes, Officer Cuellar noticed that the scooter had no key and that Reyes was nervous and sweating. These observations, combined with the time of day; the fact that Reyes was coming from the direction of a scooter store; Officer Cuellar’s knowledge of recent scooter thefts in the area; and Reyes’ statements that the scooter belonged to a friend whose last name and address he did not know, all gave rise to a reasonable suspicion that criminal activity might be afoot.
 
 See State v. Lennon,
 
 963 So.2d 765, 768 (Fla. 3d DCA 2007) (holding that “[a]n officer ... may detain a person in order to determine identity and circumstance when that officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot”).
 

 As we stated in
 
 Lennon,
 
 963 So.2d at 768:
 

 In determining whether a police officer possesses a reasonable suspicion to justify an investigatory stop, the court must consider the totality of the circumstances viewed in light of a police officer’s experience and background.
 
 See Hernandez v. State,
 
 784 So.2d 1124, 1126 (Fla. 3d DCA 1999);
 
 Brown v. State,
 
 592 So.2d 1237, 1238 (Fla. 1st DCA 1992); Moore
 
 v. State,
 
 561 So.2d 625, 626 (Fla. 1st DCA 1990).
 

 In determining whether, the circumstances are such as to justify an investigatory stop, the following factors should be considered:
 

 The time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer’s knowledge. To this list may be added, the factor of flight.
 

 Lennon,
 
 963 So.2d at 768-69 (quoting
 
 Hernandez,
 
 784 So.2d at 1126).
 

 Here, considering “the time ... the physical appearance of the suspect, the behavior of the suspect ... [and those things that were] incongruous or unusual in the situation as interpreted in the light of th[is] officer’s knowledge,”
 
 Lennon,
 
 963 So.2d at 768-69, a well-founded suspicion was demonstrated, justifying an investigatory stop.
 
 See Satunino-Boudet v. State,
 
 682 So.2d 188, 191 (Fla. 3d DCA 1996) (confirming that when determining whether a reasonable and well-founded suspicion existed to justify the investigatory stop, the totality of the circumstances are to be examined);
 
 State v. Black,
 
 617 So.2d 777, 778 (Fla. 3d DCA 1993) (deciding that stop was justified where the officer observed defendant on the street at 6:50 a.m. pushing a shopping cart containing six rolls of new roofing paper who, in response to the officer’s questions, gave the unlikely explanation that he found the roofing paper in a trash pile);
 
 State v. Davis,
 
 543 So.2d 375, 377 (Fla. 3d DCA 1989) (finding that officer had reasonable suspicion to search a defendant who gave inconsistent answers to an officer’s questions and who was unable to describe the content of the bag that he allowed the officer to search).
 

 The fact that the investigatory stop conducted by Officer Cuellar (and
 
 *50
 
 Reyes’ subsequent temporary detention) was supported by an articulable suspicion that criminal activity was afoot, does not, however, validate the search conducted during that stop and detention. To the contrary, section 901.151 of the Florida Statutes limits the scope of searches conducted during such stops to searches for weapons:
 

 Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) [authorizing investigatory stops and temporary detentions] has probable cause to believe that any person whom the officer ... is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person,
 
 the officer may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosiny, the presence of such weapon
 
 ....
 

 § 901.151(5), Fla. Stat. (2008) (emphasis added);
 
 see Terry v. Ohio,
 
 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (confirming that a search conducted for the sole purpose of protecting a police officer and others must “be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, and other hidden instruments for the assault of the officer”);
 
 Piediscalzo v. State,
 
 549 So.2d 255, 256-257 (Fla. 2d DCA 1989) (same).
 

 The officer in this case testified that he feared that Reyes might be armed and based on that fear conducted a pat-down search. Officer Cuellar did not, however, limit that search to a search for weapons. Rather, he testified that although he did not see or feel any bulge in Reyes’ clothing, and had no other indication that Reyes was in possession of a weapon, he reached into Reyes’ pocket and retrieved Reyes’ drivers’ license. This went beyond the scope of the search permitted making suppression of this evidence appropriate.
 

 The same cannot, however, be said about the evidence relating to ownership of the scooter. The testimony about this evidence was that while Officer Cuellar was talking to Reyes and conducting the pat-down search, a backup police officer arrived and ran a check on the scooter’s VIN. That check, conducted before Reyes was arrested, confirmed that the scooter belonged not to Reyes or his friend, but to a scooter store. This evidence, secured independently from the pat-down search, was legally obtained following a valid investigatory stop and temporary detention. Since it was not connected to the tainted evidence obtained pursuant to the illegal pat-down search, it should not have been suppressed.
 
 See Jackson v. State,
 
 1 So.3d 273 (Fla. 1st DCA 2009) (“Even when a Fourth Amendment violation has occurred, evidence should be suppressed only if it ‘has been come at by exploitation of the illegality’ and was not obtained ‘by means sufficiently distinguishable to be purged of the primary taint.’
 
 Wong Sun v. United States,
 
 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).”).
 

 Suppression of the evidence seized regarding Reyes’ identity is, therefore, affirmed; suppression of the evidence relating to ownership of the scooter is reversed.
 

 Affirmed in part, reversed in part and remanded.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).