RAMIREZ, J.
 

 Yosmar Poviones appeals to this Court the trial court’s final judgment of conviction and sentence. We affirm. Based on a consideration of the totality of the circumstances, the trial court properly denied the motion to suppress.
 

 I.
 

 Poviones was charged by information with attempted first degree murder with a firearm (count I), attempted felony murder (count II), armed burglary (count III), carrying a concealed firearm (count IV), and use of a firearm during the commission of a felony (count V). The defense filed a motion to suppress his confession as well as the physical evidence obtained after he was arrested for loitering and prowling.
 

 On November 18, 2004, at 5:08 a.m., Hialeah Police Department Officer Kenneth Robinson responded to a report of an audible alarm at 2257 East 10th Avenue in Miami, Florida. After arriving at the scene and seeing nothing wrong, Officer Robinson prepared a false alarm report card. As he was about to place the false alarm report card on the front door of the premises, the office door opened. Officer Robinson was approximately eight to twelve feet away. He identified himself as a police officer and ordered the subject to get down oh the ground. The subject fired a shot in Officer Robinson’s direction. While turning and running for cover, Officer Robinson fired from his gun and was then struck in the back by another shot as he sought cover behind a pick-up truck.
 

 At the suppression hearing, Officer Robinson stated that he did not remember speaking to the responding officer or of giving a description of the suspect. However, he agreed that the suspect was short and had dark clothing.
 

 Officer Fernando Jose Carvajal testified that on the date in question, he was riding as a field training officer with a probationary officer, Officer Rosalyn Byrd. Officer Carvajal “heard Officer Robinson give a yell out in the area saying that he had been shot.” Officer Carvajal knew that Officer Robinson had gone to an alarm call and he stated that “you could tell in his voice the distress.”
 

 When he arrived, Officer Carvajal approached Officer Robinson and asked him the location of the subject. Officer Robinson pointed towards the northeast. Officer Carvajal used a diagram during his testimony to describe an area of commercial buildings running north and south along 10th Avenue below 23rd Street.
 

 Officer Carvajal also testified that Officer Robinson gave him a description of the shooter. Officer Robinson told him the
 
 *601
 
 perpetrator was a white Hispanic male, approximately 5'4" tall, weighing 120 to 130 pounds, wearing a light colored shirt and black pants.
 

 Within minutes after speaking with Officer Robinson, Officer Carvajal saw a person walking in a northeasterly direction on 23rd street having Come from a U-shaped street. Officer Carvajal testified that Po-viones “more or less matched the description of the subject ... [but] he was wearing instead of a light shirt, he had a black shirt on.” The sleeves of the shirt were cut off, and Officer Carvajal was surprised by Poviones’ sudden appearance at 5:00 a.m. that November morning, so lightly dressed, when the weather was so cool.
 

 The officer ordered Poviones to walk towards him, but Poviones began pointing in the other direction, stating that “he [the asssailant] went that way” and that the assailant was wearing a gray shirt and black pants. Officer Carvajal asked Po-viones several times to come towards him, but Poviones continued to walk east. Officer Carvajal testified that in his experience, Poviones’ behavior was inconsistent with that of a witness who was trying to give information that would assist police in apprehending a suspect who was trying to get away.
 

 Poviones began to walk away when Officer Carvajal grabbed his arm and brought him to the squad car. Because they were looking for an armed subject, Officer Car-vajal ordered Poviones to put his hands on the car for a pat down. Officer Carvajal stated that Poviones started to move around, looking around, and he did not put his hands on the car. Officer Carvajal grabbed the back of Poviones’ waistband and forced him to put his hands on the car. Poviones tried to move sideways, but was physically restrained and patted down. Officer Carvajal also noticed the presence of lint of a light color, as if from a sweater, on the dark colored shirt Poviones was wearing. The search did not reveal any weapons or contraband.
 

 Officer Carvajal then questioned Po-viones, who initially stated that he was coming from work and then changed his answer saying he was going to work. He could not provide a name or an address of where he worked. Poviones then told Officer Carvajal he lived in the northwest, then in Hialeah, and then he admitted that he was homeless. The conversation started in English and then switched back and forth between English and Spanish. Thereafter, knowing that there had just been a burglary and a shooting by someone who closely resembled Poviones, seeing that Poviones’ behavior raised a reasonable alarm that Poviones might be a danger, and because the answers given by Poviones did nothing to dispel Officer Car-vajal’s alarm, he made the decision to arrest Poviones for loitering and prowling.
 

 Poviones was handcuffed and placed in the backseat of the police car. Officer Robinson had an opportunity to view Po-viones at the scene, but could not identify him as the assailant.
 

 After Poviones was in custody, the police continued searching for the shooter. Po-viones remained handcuffed in the backseat of the patrol car for several hours because Officer Carvajal’s vehicle was located at one of the perimeter points that had been established to help the ongoing search for the suspect. He was transported to the police station about two and one half hours after his arrest.
 

 Major crimes Detective Ernest Clavijo interviewed Poviones at the station, after Poviones was read his Miranda rights. At 9:49 a.m. Poviones signed and initialed a waiver form. Poviones made a tape-recorded admission to Officer Clavijo that he was the one who shot at Officer Robinson.
 
 *602
 
 Officer Clavijo asked him why he shot at the officer. Poviones became distraught and said, “this is why I do things like this, because of this right here” and placed a crack cocaine pipe on the table. Poviones disclosed that he hid the gun he used in the back seat of the police car. The police then searched the rear of the squad car and found the gun under the seat. Po-viones admitted that he was involved in the burglary of the business and that he had taken the gun from the business. Po-viones also consented to give a DNA sample.
 

 Detective Carlos Diaz was writing the arrest form when Poviones, without being questioned about it, told him that Officer Robinson shot at him first, and he fired back twice. Poviones was later transported to the Miami-Dade County Jail by Officer Jorge Gonzalez. He made several statements not in response to any questioning. While being processed into the jail, Poviones sat on a bench at the rear entrance to the facility, about eight feet from Officer Gonzalez. Officer Gonzalez was conversing with other policemen when Poviones remarked in Spanish that he should have shot the victim in the head, that he hated African-Americans and African-American police officers.
 

 The trial court denied the motion to suppress the revolver and the confession, finding that based on the totality of the circumstances, the police had probable cause to arrest Poviones for loitering and prowling.
 

 After the ensuing trial, the jury found Poviopes guilty as charged and specifically determined that he had discharged a firearm during the commission of both attempted murder counts and the burglary. The trial court sentenced Poviones to three concurrent eighty-year prison terms on counts I, II and III, with concurrent three-year and twenty-five year minimum mandatories. On counts IV and V, the court imposed concurrent sentences of five years and fifteen years, respectively.
 

 II.
 

 On appeal, Poviones contends that the physical and testimonial evidence derived from the arrest should have been suppressed as fruit of the poisonous tree and that his presence in the area where he was arrested was insufficient to sustain an arrest for loitering and prowling. The State answers that the trial court properly denied the motion to suppress after correctly ruling that there was probable cause to arrest Poviones for loitering and prowling. We agree with the State that an examination of the totality of the circumstances indicated a reasonable suspicion to conduct an investigatory stop and justification for the pat down. Accordingly, the firearm and the subsequent confession were both properly admitted as evidence because they were not products of an unlawful arrest.
 

 In reviewing a trial court’s ruling on a motion to suppress, the evidence developed at a suppression hearing must be interpreted in a manner most favorable to sustaining the trial court’s ruling.
 
 Connor v. State,
 
 803 So.2d 598, 605 (Fla.2001). However, whether the trial court’s application of law to the facts establishes an adequate basis for the trial court’s ruling is subject to de novo review.
 
 Id.
 
 at 608.
 

 A review of the facts here indicates that the trial court was correct in determining that there was probable cause to arrest Poviones for loitering and prowling, after making a valid investigatory stop. “An officer ... may detain a person in order to determine identity and circumstances when that officer has reasonable suspicion, supported by articulable facts, that criminal activity may be afoot.”
 
 State
 
 
 *603
 

 v. Lennon,
 
 963 So.2d 765, 768 (Fla. 3d DCA 2007). Some factors an officer may consider are:
 

 The time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer knowledge.
 

 Id.
 
 at 768-69.
 

 In the case before us, when Officer Car-vajal first met Poviones, it was only minutes after the incident occurred. Poviones was coming out of a U-shaped business area with no other means of access. Po-viones matched the description given by Officer Robinson. The only item of clothing that did not match Officer Robinson’s description was the color of Poviones’ short-sleeve shirt, which surprised Officer Carvajal because it was a cool November morning at 5:00 a.m. There was no one else in the immediate vicinity. When Officer Carvajal called Poviones over, Po-viones quickened his pace and did not approach Officer Carvajal. In addition, the crime had occurred in another building located outside of the enclosed U-shaped area, that could only be accessed by climbing on the roof. It was reasonable for Officer Carvajal to conclude that a person who would use the rooftops to access the area had criminal intent. In addition, Officer Carvajal noted that Poviones’ behavior was inconsistent with that of a witness who was trying to help the police in finding a suspect that was trying to get away. In sum, the facts provided Officer Carvajal with a reasonable suspicion that criminal activity was afoot sufficient to justify making an investigatory stop.
 

 Next, considering Poviones’ behavior as evaluated in the officer’s experience, it was reasonable for Officer Carvajal to conduct a pat down of Poviones to see if he had a weapon.
 
 See
 
 § 901.151(5), Fla. Stat. (2004);
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In fact, if Officer Carvajal had patted down Poviones more thoroughly, he would have found the weapon concealed in Poviones’ back pocket. As such, the revolver could have been found through this lawful means and could have been admitted as evidence on that basis.
 
 Rosales v. State,
 
 878 So.2d 497, 500 (Fla. 3d DCA 2004) (“[Ejvidence which was originally obtained improperly should not be suppressed, provided that it would have been legitimately uncovered pursuant to normal police practices.”). Poviones could have been arrested on a concealed weapons charge, rather than loitering and prowling.
 

 However, as a result of Poviones’ conduct, the arrest for loitering and prowling was also justified. According to section 856.021(1), Florida Statutes (2004), the elements of loitering and prowling are: 1) loitering and prowling in a place, at a time, or in a manner not usual for law-abiding individuals; and 2) the loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
 

 The facts here indicate that Poviones was in a circumstance that was not usual for law-abiding individuals. He was in an enclosed business area at 5:00 a.m. when all the businesses were closed. A police officer had just been shot nearby. Po-viones essentially matched the description of the suspect given by the victim. He was walking in a direction that was consistent with fleeing the scene. The police officer was aware the subject had either been involved in the shooting or had climbed over the roofs of the adjoining businesses. He was not assisting a police officer to apprehend a suspect that was
 
 *604
 
 trying to
 
 get
 
 away. In addition, Poviones could not produce identification or provide his address or work information.
 
 See Lugo v. State,
 
 992 So.2d 415 (Fla. 3d DCA 2008). As such, Officer Carvajal properly arrested him for loitering and prowling.
 

 Accordingly, we affirm the trial court’s conviction and sentence.