TORPY, J.
 

 In this cocaine possession case, we address whether an experienced police officer’s observations of a hand-to-hand exchange in a high crime area, along with other suspicious behavior, gave rise to a “reasonable suspicion” of criminal activity, thereby justifying the detention of Appellant for further investigation. We conclude that the totality of the circumstances in this case justified the detention. Accordingly, we affirm the order that denied the motion to suppress.
 

 During the suppression hearing, the following facts were adduced. On a Friday evening in 2007, a team of officers from the Brevard County Sheriffs Office was conducting a storefront operation at a 7-Eleven in Cocoa, Florida. The area in which the 7-Eleven is located was “generally known as high crimes, high drug traffic area.” One of the officers, Sgt. Moly-neaux, a sixteen-year veteran officer, was in plain clothes in an undercover truck parked in 7-Eleven’s parking lot looking for criminal activity, including drug sales.
 

 At about 9:30 p.m., Sgt. Molyneaux saw Appellant drive into the 7-Eleven parking lot and park on the side of the building away from the general store traffic, although there were spaces available in front of the store. He concluded that Appellant looked “very nervous” because “[h]is eyes were very wide, and he was looking around a lot ... like he was looking for somebody.” While Appellant was in the store, he continued to look out toward the parking lot as if he was looking for somebody. Minutes after Appellant entered the store, a white Buick entered the parking lot quickly and abruptly stopped next to Appellant’s vehicle. Appellant exited the store, immediately walked over to the Buick and opened the passenger’s side door. The Buick’s driver handed something to Appellant, who in turn handed something to the driver and shut the door. The Buick then sped off. Sgt. Molyneaux saw Appellant put something in his left front pocket then get into his vehicle and drive off.
 

 Sgt. Molyneaux was approximately forty feet from the transaction with a clear view, but did not see what Appellant and the Buick’s driver were handing each other. Nonetheless, based on his training and experience, he believed that he had witnessed a drug transaction and called for police units to stop Appellant and the Buick. After being advised by Sgt. Moly-neaux of his observations, Deputy Forrest stopped Appellant’s vehicle before it left the 7-Eleven parking lot. When Appellant stepped out of the vehicle, Deputy Forrest saw a small bag of cocaine in plain view, seized it and arrested Appellant.
 

 The trial court denied Appellant’s motion to suppress, finding that there was reasonable suspicion to support the investigatory stop of Appellant’s vehicle. In its order, the trial court stated:
 

 Here, Officer Molyneaux was a seasoned law enforcement officer with extensive drug training, working six years in the narcotics unit, and vast experience in hand-to-hand drug transactions. The area was known for high drug trafficking, and Officer Molyneaux was there conducting surveillance for drug transactions. In light of Officer Molyneaux’s experience, the Defendant’s behavior prior to the hand-to-hand transaction was suspicious in that he did not park in the regular traffic area of the convenience store, his eyes were wide, he was acting nervous looking for someone, and while he was in the store, he was looking for someone.
 

 
 *494
 
 After the court denied Appellant’s motion to suppress, he pled guilty, while preserving the dispositive issue of whether the investigatory stop was predicated on “reasonable suspicion.”
 

 “Articulating precisely what ‘reasonable suspicion’ ... mean[s] is not possible. [It is a] commonsense, nontechnical” concept.
 
 Ornelas v. United States,
 
 517 U.S. 690, 695-96, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). It arises from “specific and articulable facts” and the “rational inferences from those facts.”
 
 Terry v. Ohio,
 
 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). “While ‘reasonable suspicion’ is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.”
 
 Illinois v. Wardlow,
 
 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citing
 
 United States v. Sokolow,
 
 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). Although not precisely delineated, the minimal level of justification for an investigatory stop has been described as something more than a “mere hunch.”
 
 United States v. Arvizu,
 
 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). A “mere hunch” is simply a suspicion based on bare intuition.
 

 To determine whether an officer’s suspicions are supported by “more than a mere hunch,” the court must look at the “totality of the circumstances,” viewed in light of the officer’s “experience and specialized training.”
 
 Arvizu,
 
 534 U.S. at 273-74, 122 S.Ct. 744. Thus, even seemingly innocent behavior may support an inference that criminal activity is afoot when viewed from the perspective of an experienced officer.
 
 Id.
 
 at 274-75, 122 S.Ct. 744. It is the function of the trial court to determine the historical facts, which includes a determination of whether a particular police officer has the experience to draw a particular inference from a given circumstance and whether the officer actually drew the inference. We are to give deference to these factual determinations.
 
 Id.
 
 at 277, 122 S.Ct. 744;
 
 see Ornelas,
 
 517 U.S. at 699, 116 S.Ct. 1657 (stating inferences drawn by police and trial judge from historical facts deserve deference). Whether the inference drawn by police was objectively reasonable involves the application of logic and judicial experience and is reviewable
 
 de novo. Ornelas,
 
 517 U.S. at 696, 116 S.Ct. 1657.
 

 The seminal case of
 
 Terry v. Ohio
 
 best illustrates the proper application of these concepts. There, an experienced beat cop saw two men on the street corner in the middle of the afternoon. The men would converse and then take turns walking to the front of a store where they would look in. They repeated this pattern about twelve times. The officer suspected that they might be “casing a job, a stick-up” and feared that they might have weapons.
 
 Terry,
 
 392 U.S. at 6, 88 S.Ct. 1868. He confronted the men, identified himself and frisked them for weapons, recovering two handguns. Our high court upheld the detention, concluding that the officer’s actions were grounded in the reasonable belief that the men were engaged in criminal activity and might be armed. Although the activities of the men were innocent enough to an untrained eye, when viewed by a police officer with many years of experience, the suspicion amounted to more than a mere hunch; it constituted a reasoned suspicion based upon articulable facts.
 

 Applying these concepts to this case, giving “due weight to the factual inferences drawn by the law enforcement officer and the [trial] judge,” as we must, we conclude that the trial court was cor
 
 *495
 
 rect.
 
 Arvizu,
 
 534 U.S. at 277, 122 S.Ct. 744. The parking lot was a high crime area of known drug activity.
 
 See Wardlow,
 
 528 U.S. at 124, 120 S.Ct. 673 (stating fact that stop occurred in “high crime area” among relevant contextual considerations in
 
 Terry
 
 analysis). Appellant appeared nervous.
 
 See id.
 
 (noting “nervous, evasive behavior” pertinent factor in determining reasonable suspicion). The officer, who was experienced at watching drug transactions in public places and who had discerned certain peculiar habits exhibited by these criminals, articulated the peculiar facts that supported his suspicions. Appellant parked his car in an unusual spot and was only in the store for a short time. While there, he continually watched the parking lot until the Buick arrived, which parked next to his vehicle. Appellant exited the store and exchanged something with the man in the Buick. After the exchange, the Buick left quickly, and Appellant attempted to leave immediately before being stopped by police. Although each individual action might have been innocent enough to an untrained observer, when considered together, from the vantage point of the seasoned police officer, the inference of criminal conduct drawn by the officer was logically deduced, reasonable, and certainly sufficient to satisfy the “more than a mere hunch,” standard announced in
 
 Terry.
 

 In reaching this conclusion, we have carefully considered the authorities upon which Appellant relies, mindful that precedent is seldom dispositive in resolving these fact-specific legal conundrums.
 
 See Ornelas,
 
 517 U.S. at 698, 116 S.Ct. 1657 (“It is true that because the mosaic which is analyzed for a reasonable-suspicion or probable-cause inquiry is multi-faceted, ‘one determination will seldom be a useful ‘precedent’ for another ....’”) (quoting
 
 Illinois v. Gates,
 
 462 U.S. 213, 238 n. 11, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). All of the authorities upon which Appellant relies are distinguishable. For example, in
 
 Santiago v. State,
 
 941 So.2d 1277 (Fla. 4th DCA 2006), the observation did not occur in a high crime area and no exchange was observed. In
 
 Belsky v. State,
 
 831 So.2d 803 (Fla. 4th DCA 2002), the officer did not articulate the facts to demonstrate how he arrived at the conclusion that the defendant had engaged in a “hand-to-hand” drug transaction, and no evidence was adduced that the officer was experienced in making this observation.
 

 Huntley v. State,
 
 575 So.2d 285 (Fla. 5th DCA 1991), is not only factually distinguishable but also of questionable vitality in light of
 
 Illinois v. Wardlow.
 
 In
 
 Huntley,
 
 we stated that the “fact that the area was ‘high crime’ ” was “irrelevant” to our analysis of whether there existed reasonable suspicion for the detention. In
 
 Ward-low,
 
 the Supreme Court concluded that the “fact that the stop occurred in a ‘high crime area’ ” was among the “relevant contextual considerations in a
 
 Terry
 
 analysis.” 528 U.S. at 124, 120 S.Ct. 673.
 

 Finally, one case cited by Appellant,
 
 Marconi v. State,
 
 927 So.2d 215 (Fla. 5th DCA 2006), is legally distinguishable. That case involved probable cause, which requires a considerably greater factual showing than reasonable suspicion.
 
 Wardlow,
 
 528 U.S. at 123, 120 S.Ct. 673.
 

 AFFIRMED.
 

 LAWSON, J., and PLEUS, JR., R., Senior Judge, concur.