29 So.3d 367 (2010)
Christina BENEMERITO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D09-558.
District Court of Appeal of Florida, Fourth District.
February 24, 2010.
Rehearing Denied March 30, 2010.
Mardi Levey Cohen of Law Office of Mardi L. Cohen, P.A., Fort Lauderdale, for appellant.
*368 Bill McCollum, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
MAY, J.
The defendant appeals her conviction and sentence for possession of cocaine with intent to deliver. She argues the trial court erred in denying her motion to suppress. We agree and reverse.
On May 7, 2008, an officer was patrolling the parking lot of Walgreens due to numerous complaints of drug transactions at the store and surrounding area. While on duty, the officer observed a parked vehicle at the entrance of the pharmacy. Thereafter, a truck entered the parking lot and parked a few spaces away from the vehicle under observation.
The defendant then entered the lot and parked her vehicle near the truck. The truck's driver walked to the defendant's vehicle, spoke briefly to the driver, and entered the backseat. While the officer could not see what was in the defendant's hand, he could see silhouettes of people in the car. He observed the truck's driver lean forward and extend his hand. The truck's driver then exited the defendant's vehicle, entered his truck, and drove off.
The officer radioed for backup. The backup officer followed the truck and stopped it for a traffic infraction. The truck's driver informed the backup officer that he bought cocaine from the defendant, whom he knew as Alize. He informed the backup officer that she was wearing all black and had long black hair. He gave the backup officer the cocaine purchased from the defendant.
While the backup officer had the truck stopped, the original officer followed and stopped the defendant because he suspected that she was involved in a drug transaction. As the officer was speaking with the defendant, the backup officer informed him that the truck's driver admitted to purchasing cocaine from the defendant. Thereafter, the officer charged the defendant with one count of possession of cocaine with intent to deliver or sell.
The defendant filed a motion to suppress her arrest.[1] The State called only the original officer to testify. He testified that he had twelve years experience, and had served with the selective enforcement team for eight years. He made two drug arrests in the previous week at the same parking lot, and had also made arrests at the plaza across the street. He had been patrolling the area for narcotic arrests for two months prior to the incident. While he did not know the defendant or the truck's driver, the police department was making daily arrests in the same area based on the same behavior. He estimated that approximately 100 arrests had been made in the area over three to four months.
The trial court denied the motion to suppress. In so doing, the court found the original officer had reasonable suspicion to stop the defendant.
Specifically, number one, he was in the parking lot, because of the e mails and information that he had received, with regards to numerous drug transactions having taken place in the parking lot of the Walgreens, as well as the other shopping center across the street.
In addition to that, the sale of drugs and/or prescription drugs were [sic] known to take place there.

*369 So, based on that, and what he saw, based on his training and experience, that is, he is involved in the selective enforcement unit. He has training in narcotics, as well as his other training, in robberies and burglaries, and that he recognized Ms. Benemerito doing in the vehicle what he believes to be a drug transaction.
And, that based upon the totality of the circumstances, and his experience, the Court will find that her behavior, and the behavior of the other person in the vehicle, and the fact that it's in an area where there have been numerous drug transactions, he mentioned at least a hundred arrests made there, and he's been involved in two of them, drug transactions over there.
There's in [sic] a reasonable suspicion that those types of transactions are occurring there.
And the co Defendant was stopped, and stated that he had just bought cocaine from her, and he said it was about the same point in time that both vehicles were stopped, and he believed that a drug transaction may have taken place, and as a result of the stop of the other vehicle also, saying that she was involved.
Immediately thereafter, the defense asked the court for a ruling on the dispositive nature of the motion. The judge then stated "[t]hat's not a problem." The defendant then pled no contest to the charges reserving her right to appeal. The judge advised the defendant: "You are going to be entering a plea, with the reservation that you can take an appeal of the denial I just did of your motion to suppress."[2] The court withheld adjudication and placed the defendant on probation for a period of eighteen months.
On appeal, the defendant argues the trial court erred in denying the motion to suppress because the officer did not have reasonable suspicion to stop her. We agree and reverse.
This Court reviews de novo, "whether the application of the law to the historical facts establishes an adequate basis for the trial court's finding of reasonable suspicion. . . ." Santiago v. State, 941 So.2d 1277, 1278 (Fla.4th DCA 2006) (quoting Lee v. State, 868 So.2d 577, 579 (Fla.4th DCA 2004)).
Whether an officer has the reasonable suspicion needed to justify an investigatory stop, based on the objective facts, depends on the totality of the circumstances observed in light of the officer's experience. . . .
It is not absolutely necessary that an officer observe drugs change hands in order to support a reasonable suspicion. Supporting circumstances may include whether the officer can see either drugs or money being transferred, the officer's narcotics experience, the reputation of the location for drug transactions, the extent of the period of surveillance, and the history of previous multiple arrests from that site.
Id. at 1279 (citations omitted).
Here, many of the Santiago factors are present. The officer had experience, knew the location's reputation for drug transactions, had made arrests at the same location, and had been on surveillance. All of these factors would lead up to the establishment of reasonable suspicion. Yet, the *370 officer observed nothing suspicious about the individuals or their actions. He witnessed only silhouettes in a car and the movement of one person's arm. He did not know either driver or recognize their vehicles, had no tip regarding the individuals, did not see any drugs or money, and did not observe a hand-to-hand transaction. Rather, he witnessed a person enter the backseat of another vehicle for a few minutes, and move his arm. This observation was insufficient to raise the other factors to the level of reasonable suspicion. If we were to allow presence in a high crime area and prior arrests in the area to be sufficient to give rise to reasonable suspicion, then any law-abiding citizen who moves in such an area would be subject to an investigatory detention.
We disagree with the dissent's suggestion that our opinion focuses on the fact that the officer neither saw the exchange nor knew the participants. Quite the contrary, we adhere to the well-established rule that each case must be judged on its particular facts and the "totality of the circumstances observed in light of the officer's experience." Id. The spectrum of other facts that might contribute to reasonable suspicion is as vast and varied as the human experience and incapable of being itemized. We simply find the facts to support reasonable suspicion in this case to be wanting.
For these reasons, we reverse the order denying the motion to suppress and remand the case to the trial court for further proceedings.
Reversed and Remanded.
POLEN, J., concurs.
GERBER, J., dissents with an opinion.
GERBER, J., dissenting.
I respectfully dissent. In Wallace v. State, 8 So.3d 492 (Fla.5th DCA 2009), the fifth district reiterated the concepts which apply to a "reasonable suspicion" determination:
To determine whether an officer's suspicions are supported by "more than a mere hunch," the court must look at the "totality of the circumstances," viewed in light of the officer's "experience and specialized training." [United States v.] Arvizu, 534 U.S. [266,] 273-274, 122 S.Ct. 744, 151 L.Ed.2d 740 [(2002)]. Thus, even seemingly innocent behavior may support an inference that criminal activity is afoot when viewed from the perspective of an experienced officer. Id. at 274-75, 122 S.Ct. 744. It is the function of the trial court to determine the historical facts, which includes a determination of whether a particular police officer has the experience to draw a particular inference from a given circumstance and whether the officer actually drew the inference. We are to give deference to these factual determinations. Id. at 277, 122 S.Ct. 744; see Ornelas [v. United States], 517 U.S. [690,] 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 [(1996)] (stating inferences drawn by police and trial judge from historical facts deserve deference). Whether the inference drawn by police was objectively reasonable involves the application of logic and judicial experience and is reviewable de novo. Ornelas, 517 U.S. at 696, 116 S.Ct. 1657.
Wallace, 8 So.3d at 494 (other internal citations omitted).
Applying the foregoing concepts to this case, I would reach a different result after comparing this case with Santiago. In Santiago, we reversed an order denying a motion to suppress. We described the facts and our reasoning as follows:
The arresting officer, working on another case in the parking lot of a motel *371 at approximately 7:00 p.m., noticed Appellant "pass [ ] up a lot of open parking spaces and [go] to the backside of the lot." A minute or so later, he observed Appellant flash his headlights as another vehicle entered the parking lot. The other vehicle parked right beside Appellant's vehicle. Appellant got out of his vehicle, spoke briefly with the other driver, and returned to his vehicle. Appellant soon returned to the passenger side of the other vehicle. The parking lot was well lit and very open. The area was not known for narcotics transactions. Both vehicles then left the parking lot. The officer followed, stopped Appellant, and directed another unit to stop the other vehicle.
The arresting officer testified to his extensive experience and training involving street crime, surveillance, and drug transactions. He was not sure what, if anything, passed between Appellant and the occupant of the other vehicle, but concluded that he had witnessed a hand-to-hand drug transaction. He acknowledged, however, that it could have been an innocent transaction. Appellant introduced the dispatch tape of the incident. On the tape, the officer states, "I don't know if that's a hand-to-hand or what the story is."
. . . .
[N]otwithstanding that the arresting officer saw a transaction of some kind, he did not see an exchange of drugs or currency. We conclude that under the totality of the circumstances, there was not a reasonable suspicion to justify a stop. The transaction did not occur in a location known for drug transactions or arrests, the participants were not known to the officer, and neither the area nor the parties were under surveillance for this purpose. In this case, the only factors relied on by the officer to interpret the subsequent conduct of the participants were their chosen location within the parking lot and the flashing of the lights. . . . While the officer believed that he was acting on "more than a hunch" in making the stop, we conclude that parking at this location, accompanied by the blinking of car lights and followed by an apparent exchange of something, otherwise completely innocent acts, are not, alone, sufficient to support a reasonable and founded suspicion that a crime had occurred, notwithstanding that the observation was by an experienced officer.
Santiago v. State, 941 So.2d 1277, 1278-80 (emphasis added).
As in Santiago, the officer here did not see an exchange of drugs or currency, and did not know the participants. However, unlike Santiago, the transaction here did occur in a location known for drug transactions and arrests, and the area was under surveillance for that purpose on the night in question. See Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (fact that stop occurred in "high crime area" was among relevant contextual considerations in analysis under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Because this court found the absence of those two factors significant in Santiago, I believe the presence of those two factors here, along with the surveilling officer's observations and experience, established reasonable suspicion in this case.
The majority minimizes those factors and the surveilling officer's observations and experience, contrary to Arvizu and Ornelas. Instead, the majority focuses on the facts that the officer here did not see an exchange of drugs or currency and did not know the participants. However, as we stated in Santiago, "[i]t is not absolutely necessary that an officer observe drugs change hands in order to support a reasonable *372 suspicion." 941 So.2d at 1279. Further, the fact that the officer did not know the participants should be the least significant consideration given the low likelihood that an officer will know a participant in any given case.
In sum, "[a]lthough each individual action [of the defendant] might have been innocent enough to an untrained observer, when considered together, from the vantage point of the seasoned police officer, the inference of criminal conduct drawn by the officer was logically deduced, reasonable, and certainly sufficient to satisfy the `more than a mere hunch,' standard announced in Terry." Wallace, 8 So.3d at 495. "[G]iving due weight to the factual inferences drawn by the law enforcement officer and the [trial] judge, as we must," id. at 494 (internal quotations and citation omitted), I would affirm.
NOTES
[1] The defendant sought to suppress the stop and arrest because without them, the officer had no way of obtaining her identification. Neither the officer nor the driver of the truck knew the defendant or her correct name.
[2] The State questions whether the trial court's ruling was dispositive. Our review of the transcript reflects that the trial court believed the ruling to be dispositive. J.J.V. v. State, 17 So.3d 881, 883 (Fla.4th DCA 2009) (stating that "the lack of an express finding that the issue is dispositive is not fatal").