GERBER, J.,
dissenting.
I respectfully dissent. In Wallace v. State, 8 So.3d 492 (Fla. 5th DCA 2009), the fifth district reiterated the concepts which apply to a “reasonable suspicion” determination:
To determine whether an officer’s suspicions are supported by “more than a mere hunch,” the court must look at the “totality of the circumstances,” viewed in light of the officer’s “expei’ience and specialized training.” [United Slates v.] Arvizu, 534 U.S. [266,] 273-274, 122 S.Ct. 744, 151 L.Ed.2d 740 [(2002)]. Thus, even seemingly innocent behavior may support an inference that criminal activity is afoot when viewed from the perspective of an experienced officer. Id. at 274-75, 122 S.Ct. 744. It is the function of the trial court to determine the historical facts, which includes a determination of whether a particular police officer has the experience to draw a particular inference from a given circumstance and whether the officer actually drew the inference. We are to give deference to these factual determinations. Id. at 277, 122 S.Ct. 744; see Ornelas [v. United States ], 517 U.S. [690,] 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 [(1996)] (stating inferences drawn by police and trial judge from historical facts deserve deference). Whether the inference drawn by police was objectively reasonable involves the application of logic and judicial experience and is reviewable de novo. Ornelas, 517 U.S. at 696, 116 S.Ct. 1657.
Wallace, 8 So.3d at 494 (other internal citations omitted).
Applying the foregoing concepts to this case, I would reach a different result after comparing this case with Santiago. In Santiago, we reversed an order denying a motion to suppress. We described the facts and our reasoning as follows:
The ari'esting officer, working on another case in the parking lot of a motel *371 at approximately 7:00 p.m., noticed Appellant “pass [ ] up a lot of open parking spaces and [go] to the backside of the lot.” A minute or so later, he observed Appellant flash his headlights as another vehicle entered the parking lot. The other vehicle parked right beside Appellant’s vehicle. Appellant got out of his vehicle, spoke bi'iefly with the other driver, and returned to his vehicle. Appellant soon returned to the passenger side of the other vehicle. The parking lot was well lit and very open. The area was not known for narcotics transactions. Both vehicles then left the parking lot. The officer followed, stopped Appellant, and directed another unit to stop the other vehicle.
The arresting officer testified to his extensive experience and training involving street crime, surveillance, and drug transactions. He was not sure what, if anything, passed between Appellant and the occupant of the other vehicle, but concluded that he had witnessed a hand-to-hand drug transaction. He acknowledged, however, that it could have been an innocent transaction. Appellant introduced the dispatch tape of the incident. On the tape, the officer states, “I don’t know if that’s a hand-to-hand or what the story is.”
[[Image here]]
[Notwithstanding that the arresting officer saw a transaction of some kind, he did not see an exchange of drugs or currency. We conclude that under the totality of the circumstances, there was not a reasonable suspicion to justify a stop. The transaction did not occur in a location known for drug transactions or arrests, the participants were not known to the officer, and neither the area nor the parties were under surveillance for this purpose. In this case, the only factors relied on by the officer to interpret the subsequent conduct of the participants were then.' chosen location within the parking lot and the flashing of the lights.... While the officer believed that he was acting on “more than a hunch” in making the stop, we conclude that parking at this location, accompanied by the blinking of car lights and followed by an apparent exchange of something, otherwise completely innocent acts, are not, alone, sufficient to support a reasonable and founded suspicion that a crime had occurred, notwithstanding that the observation was by an experienced officer.
Santiago v. State, 941 So.2d 1277, 1278-80 (emphasis added).
As in Santiago, the officer here did not see an exchange of drugs or currency, and did not know the participants. However, unlike Santiago, the transaction here did occur in a location known for drug transactions and arrests, and the area was under surveillance for that purpose on the night in question. See Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (fact that stop occurred in “high crime area” was among relevant contextual considerations in analysis under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Because this court found the absence of those two factors significant in Santiago, I believe the presence of those two factors here, along with the surveilling officer’s observations and experience, established reasonable suspicion in this case.
The majority minimizes those factors and the surveilling officer’s observations and experience, contrary to Arvizu and Ornelas. Instead, the majority focuses on the facts that the officer here did not see an exchange of drugs or currency and did not know the participants. However, as we stated in Santiago, “[i]t is not absolutely necessary that an officer observe drugs change hands in order to support a reason *372 able suspicion.” 941 So.2d at 1279. Further, the fact that the officer did not know the participants should be the least significant consideration given the low likelihood that an officer will know a participant in any given case.
In sum, “[a]lthough each individual action [of the defendant] might have been innocent enough to an untrained observer, when considered together, from the vantage point of the seasoned police officer, the inference of criminal conduct drawn by the officer was logically deduced, reasonable, and certainly sufficient to satisfy the ‘more than a mere hunch,’ standard announced in Terry.” Wallace, 8 So.3d at 495. “[G]iving due weight to the factual inferences drawn by the law enforcement officer and the [trial] judge, as we must,” id. at 494 (internal quotations and citation omitted), I would affirm.