SAWAYA, J.
In order to ensure that an individual’s constitutional right to be free from unreasonable searches and seizures is not violated,[1] an investigatory stop by the police must be based on reasonable suspicion that the individual has committed or is committing a crime. United States v. Ar-vizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). The question presented is whether the police had the requisite reasonable suspicion when they stopped the appellant, William Andrew Price, and found the drugs that led to his convictions of sale of a Schedule IV substance and possession of cocaine.[2] The answer to this question will determine the answers to the questions of whether the trial court properly denied Price’s Motion to Suppress and whether his convictions should be affirmed.
The convictions are the result of an open plea Price made to the court after he reserved his right to appeal the denial of the Motion to Suppress he had previously filed. In that motion, which the trial court found and the State stipulated is dispositive, Price contended that his constitutional rights were violated when he was improperly detained and the drugs improperly seized during an illegal investigatory stop conducted by the police.
An investigatory stop, which is often referred to as a Terry stop (this moniker derives from the seminal case of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), is a level of police encounter that occurs when an officer temporarily detains an individual for “investigatory purposes.” State v. Leonard, 103 So.3d 998, 1000 (Fla. 3d DCA 2012); Huffman v. State, 937 So.2d 202, 206 (Fla. 1st DCA 2006). Because an investigatory stop constitutes a seizure, once the defendant properly raises the issue, the burden falls upon the State to establish the validity of the investigatory stop by showing that it *200 was based on reasonable suspicion. § 901.151, Fla. Stat. (2010); Arvizu; United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Terry; United States v. Longmire, 761 F.2d 411 (7th Cir.1985); Caldwell v. State, 41 So.3d 188 (Fla.2010); Leonard; Nettles v. State, 957 So.2d 689 (Fla. 5th DCA 2007); Huffman.
Reasonable suspicion is a less demanding standard than probable cause, see Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), but defining exactly what it is has proved difficult, primarily because reasonable suspicion may be the result of many different factors emanating from a vast array of cases with widely differing facts and circumstances. See Arvizu. Although there are common factors that permeate many cases, and we will consider some of them later, the courts have consistently recognized that the concept of reasonable suspicion is not a compendium of precise legal rules that apply with equal precision to the myriad factors (common or otherwise) that may be present in any particular case. Id. Drawing on the principles established in cases subsequent to Terry, the Court in United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), explained that “the essence of all that has been written is that the totality of the circumstances — the whole picture — must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” Id. at 417-18, 101 S.Ct. 690 (citation omitted). Since Cortez, the courts have consistently applied this standard when reviewing reasonable suspicion determinations. See Arvizu, 534 U.S. at 273, 122 S.Ct. 744; United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); United States v. Dapolito, 713 F.3d 141 (1st Cir.2013); Hilton v. State, 961 So.2d 284 (Fla.2007); Tamer v. State, 484 So.2d 583 (Fla.1986).
The particularity requirement dictates that reasonable suspicion be “ ‘grounded in specific and articulable facts.’” Dapolito, 713 F.3d at 148 (quoting United States v. Hensley, 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)). The objective requirement dictates that the courts view the facts and circumstances through the lens of a reasonable police officer giving due consideration to his or her training and experience. Terry; Dapolito. Therefore, inchoate (meaning in this context partial, unfinished, or imperfectly formed) and unparticularized suspicions or hunches will not suffice. Sokolow, 490 U.S. at 7, 109 S.Ct. 1581; see also Arvizu, 534 U.S. at 274, 122 S.Ct. 744 (“[A]n officer’s reliance on a mere ‘hunch’ is insufficient to justify a stop .... ” (quoting Terry, 392 U.S. at 27, 88 S.Ct. 1868)).
The whole picture derives from the following evidence and testimony presented at the suppression hearing. The police commenced surveillance of a strip mall at the request of a business owner who suspected illegal drug activity emanating from a pharmacy located in the mall. The police surveillance did result in a few arrests near the vicinity of the pharmacy. This mall, however, is not in a known high crime area. On December 16, 2010 (a weekday), around 11:30 a.m., a vehicle drove into a parking area adjacent to the pharmacy. Price was in the back seat and two others occupied the front seats. They were not known to the officers, the officers had no information that would lead them to believe the occupants were drug dealers, and the vehicle was not familiar to the officers. The officers, seated in unmarked vehicles parked in various locations in the parking lot, observed “mannerisms” of a front seat passenger in the form of head *201 and arm movements that made it appear the passenger was making hand-to-hand movements towards Price in the back seat. The officers could not see below the occupants’ heads and arms, so they only observed these “mannerisms.” The officers did not see a hand-to-hand exchange take place, and they did not see any item pass between anyone in the vehicle.
Thereafter, Price got out of the vehicle, entered the pharmacy and, a short time later, walked out holding a white bag. The police did not know whether Price obtained the contents of the white bag from the section where prescription drugs are dispensed or whether he obtained it from the part of the store where other items are sold. They did not know what was in the bag, but assumed it was a pharmacy bag and therefore contained drugs. They never saw Price open the bag or take anything out of it. When Price got back in the vehicle, the police observed the same “mannerisms” as before: head and arm movements by the front seat passenger that made it appear as though there were hand-to-hand movements toward Price in the back seat. As before, the officers did not see a hand-to-hand exchange and never saw any item passing to or from Price. The officers simply assumed that a hand-to-hand transfer took place and further assumed it involved prescription drugs Price purchased from the store.
The vehicle left the parking lot and the police followed. The driver of the vehicle committed no traffic infraction that the police observed as they continued to follow. The police pulled the vehicle over and had Price step out. He was searched, the drugs were discovered, and he was arrested and ultimately charged with the crimes previously mentioned. At the suppression hearing, the trial court made the following findings: Price and the other occupants were strangers to the police and were not known drug dealers; the area was not a high crime area; the incident occurred at 11:30 a.m. as opposed to the middle of the night; Price walked out of the pharmacy with a white bag, but many businesses use white bags; and the police testified they saw movement that appeared to be hand-to-hand movement, but never saw anything being exchanged. No findings were made regarding the experience and training of the police officers. The trial court concluded that although it was a close call, there was sufficient evidence to “at least think” there was a drug transaction going on.
Looking at the mosaic of this “whole picture,” we do not see a particularized and objective basis for reasonable suspicion that a crime was committed by Price or anyone else in the vehicle. The foundation of the State’s argument is that Price (a person unknown to the police) went inside a pharmacy, came out with a white bag (contents unknown), and got back in the car (which was unfamiliar to the police), and the police observed the front seat passenger (also unknown to the police) display “mannerisms” of head and arm movements that appeared as though the passenger was making hand-to-hand movements toward Price. As Price correctly points out in his brief, “no witness testified that they actually saw any ‘hand-to-hand’ exchange — they merely ‘assumed’ it.” From their observations, the officers formed an inchoate and unparticularized suspicion of criminal activity based on two assumptions: that the bag contained prescription drugs (remember that they were unable to see or know what was in the bag and they never saw anyone take anything out of it), and that the front seat passenger was engaging in a hand-to-hand exchange with Price (although they admittedly never saw any hand-to-hand exchange of anything between any of the occupants in the *202 vehicle). If walking out of a pharmacy with a white bag and “mannerisms” of head and arm movements of passengers in a vehicle are sufficient to form a reasonable suspicion on the part of the police that criminal activity is taking place, then the demarcation between reasonable suspicion and the forbidden hunch, see Sokolow, has been eviscerated.
Adverting to the common factors previously mentioned, because reasonable suspicion eludes precise definition, the tendency of the courts has been to compile a list of factors that are particularly relevant in informing reasonable suspicion determinations by the police. No one factor is determinative, but we believe they are illuminating and supportive of our conclusion, so we will consider those recognized by this court. They include “the time and day, the location, the physical appearance of the suspect, the suspect’s behavior, the appearance and manner of operation of any vehicle involved, and anything incongruous or unusual in the situation as interpreted in the light of the officer’s knowledge.” State v. K.N., 66 So.3d 380 (Fla. 5th DCA 2011) (citing State v. Quinn, 41 So.3d 1011, 1014 (Fla. 5th DCA 2010)); State v. Allen, 994 So.2d 1192, 1194 (Fla. 5th DCA 2008). For examples of invocations of these factors by other courts, see State v. Reyes, 4 So.3d 46, 49 (Fla. 3d DCA 2009), and State v. Lennon, 963 So.2d 765, 768-69 (Fla. 3d DCA 2007). The time of the alleged offense was in the morning hours on a weekday (Thursday) and in daylight as opposed to the darkness of night. The location was not a high crime area, although the pharmacy was being surveilled based on suspicion of illegal drug activity. The police never saw Price or the other occupants act nervous or look around in a suspicious manner. The police never saw the vehicle being operated in an illegal or unusual manner and never observed it commit any traffic infraction. There was nothing incongruous or unusual about the entire episode. Although the list of factors just quoted is not all-inclusive, in light of the holistic approach we have taken to our analysis and our consideration of the entirety of the circumstances, we do not believe it necessary to trudge through additional factors that may be found elsewhere in the case law.
The State’s reliance on Wallace v. State, 8 So.3d 492 (Fla. 5th DCA 2009), is misplaced. Not only is Wallace clearly distinguishable from the instant case, it is so inapposite as to tell us why reasonable suspicion was not established here. In Wallace, the police observed the defendant pull up to a convenience store located in a known high crime area, get out, and go inside. Id. at 492. The defendant appeared very nervous; he was wide-eyed and looked around a lot as if he were looking for someone else. Id. When another vehicle pulled up to the vehicle in which the defendant had been seated, the defendant walked out of the store and up to the other vehicle. Id. He then made a hand-to-hand exchange with the occupant of the other car, which immediately sped away. Id. In concluding that the motion to suppress was properly denied, this court held that an officer’s observation of a hand-to-hand exchange in a location known as high crime area is a specific and articu-lable fact that a reasonable officer, based on his training and experience, may objectively consider in formulating reasonable suspicion that an illegal drug transaction occurred. Id. at 495. But in the instant case, the officers never saw a hand-to-hand-exchange of anything and the location was not a known high crime area. The facts in Wallace elevate the suspicion of the officers beyond a mere hunch to the level of reasonable suspicion; no such facts are present in the instant case.
*203 We conclude that the police did not have the requisite reasonable suspicion to make the investigatory stop. Having answered the first question, we must necessarily answer the second by concluding Price’s dis-positive motion should have been granted and the drugs suppressed. We answer the third question regarding the validity of Price’s convictions for sale of a Schedule TV substance and possession of cocaine with comparable brevity by concluding that those convictions must be reversed and the case remanded with directions to discharge Price.
REVERSED; REMANDED with directions.
COHEN and BERGER, JJ., concur.

. See U.S. Const. amend. IV; Art. I, § 12, Fla. Const. The Florida Constitution expressly requires that this right be construed in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court. See Art. I, § 12, Fla. Const.; see also G.M. v. State, 19 So.3d 973, 977 (Fla.2009) (“Items obtained in violation of Florida’s constitutional protection shall be excluded from evidence if those items would be excluded pursuant to the jurisprudence of the United States Supreme Court.” (citation omitted)).

. §§ 893.13(l)(a)2. and 893.13(6)(a), Fla. Stat. (2010).