LAWSON, C.J.
The State of Florida timely appeals an order granting Manuel Luis Lama’s (“Ap-pellee”) motion to suppress, contending that “[t]he trial court erred in granting Appellee’s Motion to suppress [as] the officer had sufficient reasonable suspicion with which to conduct a traffic stop [since] [t]he officer knew that the registered owner of the car had a suspended license, and conducted a traffic stop to investigate.” We agree, and reverse.
On December 28, 2013, a little after midnight, Officer Daniel Bruns of the Orlando Police Department was driving behind a black Hyundai SUV bearing license plate number T396QH. Officer Bruns ran a check on the license plate, which revealed that the registered owner of the vehicle had a suspended license. Based on this information, Officer Bruns conducted a traffic stop, activating his emergency lights and pulling the vehicle over. He then approached the vehicle and requested the driver, subsequently identified as Ap-pellee, to hand over his registration and driver’s license. Appellee provided Officer Bruns with a Florida ID card, as opposed to a driver’s license, advising that his license was suspended. After confirming that Appellee’s license had been suspended for sixty months as a habitual traffic offender on April 25, 2011, and that no hardship license had been issued, Officer Bruns arrested Appellee for driving with a suspended license as a habitual traffic offender in violation of 322.34(5), Florida Statutes (2013).
Police may make an investigatory stop if police have reasonable suspicion that a suspect has committed, is committing, or is about to commit a crime, based on the totality of the circumstances. Popple v. State, 626 So.2d 185 (Fla.1993). Reasonable suspicion is more than a mere hunch, but specific and articulable facts, together with the rational inferences from those facts, that reasonably warrant the investigatory stop. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Wallace v. State, 8 So.3d 492, 494 (Fla. 5th DCA 2009). In Smith v. State, 574 So.2d 300, 301 (Fla. 5th DCA 1991), our court expressly held that “an officer’s investigatory detention of a vehicle’s driver is supported by a well founded suspicion of unlawful activity when the officer first determines that the vehicle’s registered owner does not possess a valid driver’s license.” We followed Smith in Hoover v. State, 880 So.2d 710 (Fla. 5th DCA 2004), Guffey v. State, 796 So.2d 1191 (Fla. 5th DCA 2001), and Florence v. State, 819 So.2d 939 (Fla. 5th DCA 2002). In addition, the Fourth District followed Smith and Hoover in Morrow v. State, 903 So.2d *899 1008 (Fla. 4th DCA 2005). No other district court of appeal has questioned or conflicted with the holding in Smith. Yet, in the proceeding below, Appellee’s counsel appears to have convinced the trial judge that Smith had been implicitly overruled by State v. Teamer, 151 So.3d 421 (Fla.2014). On appeal, Appellee argues that we should recede from Smith in light of Teamer.
In Teamer, a divided Florida Supreme Court held that an officer did not have reasonable suspicion to stop a vehicle based solely on his or her observation that the color of the vehicle did not match the color indicated on the registration associated with the vehicle’s license plate (although the make of the car did match). Upon investigation, the officer learned that the vehicle had recently been painted, but smelled a strong odor of cannabis — which ultimately led to the discovery of Illicit drugs in the vehicle. In determining that the officer did not have reasonable suspicion to stop the vehicle, the Teamer majority first noted “that the failure to update a vehicle registration to reflect a new color is not in specific violation of a Florida law,” id. at 426, and then ultimately reasoned that:
The color discrepancy here is not “inherently suspicious” or “unusual” enough or so “out of the ordinary” as to provide an officer with a reasonable suspicion of criminal activity, especially given the fact that it is not against the law in Florida to change the color of your vehicle without notifying the DHSMV.
Id. at 427-28. Smith obviously involves a different factual situation than Teamer; and, Smith is not once mentioned in the Teamer opinion. Particularly given that “the concept of reasonable suspicion is somewhat abstract[,]” U.S. v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), such that different factual situations should be analyzed independently, id. at 273, 122 S.Ct. 744 (“When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the ‘totality of the circumstances’ of each case to see whether the detaining officer has a ‘particularized and objective basis’ for suspecting legal wrongdoing.” (emphasis added)), we readily conclude that Teamer did not impliedly overrule Smith, and remain confident that Smith was correctly decided.
As explained in Smith:
To justify temporary detention, only “founded suspicion” in the mind of the detaining officer is required. Lewis v. State, 337 So.2d 1031 (Fla. 2d DCA 1976); State v. Othen, 300 So.2d 732 (Fla. 2d DCA 1974); State v. Ebert, 251 So.2d 38 (Fla. 2d DCA 1971). A “founded suspicion” is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer’s knowledge.
Id. at 300-01 (quoting State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978)). Significant to this analysis, “[rjeasonable suspicion ... [is] based on probabilities, not absolute certainty.” State v. Burgos, 994 So.2d 1212, 1214 (Fla. 5th DCA 2008) (citing State v. Jones, 417 So.2d 788, 793 (Fla. 5th DCA 1982) (explaining that “[t]he word probable means it is ‘more likely than not’ that a particular categorical statement or proposition is, or will be, true or that a particular event has, or will, occur.”)). The relevant probability here is that most vehicles are driven by their owners, most of the time.[1] As such, once *900 Officer Bruns discovered that the owner of the vehicle he was following had a suspended driver’s license, this “articulated fact” gave him a “founded suspicion” that the driver might be driving illegally. As explained in Smith, it is this articulated basis — grounded in reasonable probabilities — that distinguishes the legal stop in this case from an illegal stop in which “the officer’s conduct is . . dictated by personal whim or capriciousness.” Id. at 301., Accordingly, we reverse the trial court’s order and remand for further proceedings.
REVERSED AND REMANDED WITH DIRECTIONS.
PALMER and LAMBERT, JJ., concur.

. It is also notable that a significant number of individuals with a suspended license continue to drive, a fact often observed by anyone *900 with experience around the criminal justice system.