IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

NICHOLE VANGANSBEKE,

      Appellant,

v.                                    Case No.  5D16-2688

STATE OF FLORIDA,

      Appellee.
_____/

Opinion filed June 23, 2017

Appeal from the Circuit Court
for Marion County,
Willard Pope, Judge.

James S. Purdy, Public Defender, and
Sean K. Gravel, Assistant Public Defender,
Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Robin A. Compton,
Assistant Attorney General, Daytona
Beach, for Appellee.

PER CURIAM.

Nicole Vangansbeke appeals the denial of her dispositive motion to suppress drugs and drug paraphernalia taken from her person during a traffic stop. The officers acquired reasonable suspicion to search the car in which Vangansbeke was traveling based on a canine alert to the presence of drugs inside the vehicle. The officers then acquired reasonable suspicion to search Vangansbeke based on her movements when

exiting the vehicle, which suggested she was hiding contraband.[1] Vangansbeke argues the officers prolonged the stop beyond the time necessary to issue a traffic warning in order to perform the dog-sniff of the car. We disagree and affirm.

Vangansbeke was one of three passengers in a car that was pulled over for failure to yield at a stop sign. Because the officers who made the stop were part of a "tactical investigations unit," their undercover vehicles did not have computers. As a result, the officers had to radio the vehicle's information and the passengers' names in to the dispatcher individually. The department also shared a single channel, meaning that the officers would have to wait for the dispatcher to process earlier requests from officers at other locations before the dispatcher would be able to process their request.

Ten minutes into the stop, after completing the background checks for the driver and Vangansbeke, the officers requested a canine unit. While one officer completed the background checks for the two passengers in the backseat, the other officer radioed in the information for the vehicle and requested a citation number. Sixteen minutes into the stop, the officer received all of the information and began to write the citation. The canine arrived approximately nineteen minutes into the stop as the officer was writing the citation. The citation was still in the officer's hand when the canine alerted to drugs in the car.

After the canine alerted the officers to the presence of drugs, the passengers were ordered to exit the car. The unusual manner in which Vangansbeke adjusted her clothing as she exited the vehicle provided the officers with reasonable suspicion that she was hiding contraband. The officers searched Vangansbeke and found drugs and drug

---

[1] Vangansbeke does not challenge the legality of the initial stop, the qualifications of the canine, or the reasonable suspicion to search her person.

paraphernalia on her person. Vangansbeke moved to suppress the evidence, but the trial court denied the motion.

This Court reviews an order on a motion to suppress evidence under a mixed standard—deference is given to the trial court's factual findings, which will be upheld if supported by competent, substantial evidence, while the court's legal determinations are reviewed de novo. Sowerby v. State, 73 So. 3d 329, 331 (Fla. 5th DCA 2011). Both the United States and Florida Constitutions protect the right of the people to be free from unreasonable searches and seizures. Amend. IV, U.S. Const.; Art. I, § 12, Fla. Const. The Florida Constitution is construed in conformity with United States Supreme Court precedent. Art. I, § 12, Fla. Const.

The U.S. Supreme Court has held that a dog-sniff conducted as part of an otherwise reasonable seizure does not violate the Fourth Amendment because the canine alerts only to the presence of contraband; because there is no legitimate privacy interest in possessing contraband, the dog-sniff does not implicate legitimate privacy interests. Illinois v. Caballes, 543 U.S. 405, 408–10 (2005). A dog-sniff that prolongs a traffic stop, on the other hand, results in an unlawful seizure in violation of the Fourth Amendment absent reasonable suspicion to prolong the stop.[2] Rodriguez v. United States, 135 S. Ct. 1609 (2017). The duration of a traffic stop is limited to the "mission" of the stop—addressing the traffic violation and "related safety concerns." Id. at 1614. The inquiry is whether the dog-sniff prolonged the stop beyond the necessary time to conduct the

---

[2] The State below and on appeal has not argued the presence of reasonable suspicion to justify any prolonged seizure.

3

normal inquiries incident to a traffic stop—such as determining whether the driver and passengers have outstanding warrants—and to issue a traffic citation or warning.

Courts interpreting Rodriguez have emphasized the importance of conducting a detailed, minute-by-minute analysis of the stop to determine if the stop was prolonged. See, e.g., Underhill v. State, 197 So. 3d 90, 92 (Fla. 4th DCA 2016). In this case, the trial court found that the evidence did not support Vangansbeke's argument that the officers intentionally and unnecessarily stalled the process of issuing a traffic warning. There is substantial, competent evidence to support that finding.

The encounter was recorded on one of the officer's body cameras. The DVD created from the body camera demonstrates that the officers were diligent in executing the search and performing their duties.[3] The officers asked for the passengers' identification and immediately radioed the information in to the dispatcher. Running background checks on the vehicle, the driver, and the passengers are normal parts of a traffic stop and do not unreasonably prolong the stop. See Rodriguez, 135 S. Ct. at 1615. In addition, the entire investigation focused on the traffic infraction and related safety issues. The officer had not finished writing the traffic citation when the dog-sniff began. Cf. Jones v. State, 187 So. 3d 346, 348 (Fla. 4th DCA 2016) (finding Fourth Amendment violation where officer abandoned traffic citation to conduct dog-sniff); Underhill, 197 So. 3d at 92 (same). The only brief delay was for the officer who made the stop to locate his citation book, which took one to two minutes.

---

[3] The computer-assisted dispatch times, relied on in part by the trial court, refer to the time that the dispatcher entered the information into the computer, not the actual timeline for the course of events in this case. As a result, the DVD of the officer's body camera presents a more accurate picture of the time frame involved. This Court relied on the DVD in reviewing the trial court's order.

The trial court's order stated that if the officers prolonged the stop, it was only for a "de minimus" period of time. However, the U.S. Supreme Court and this Court, among others, have rejected a de minimus exception to the Fourth Amendment. See, e.g., Rodriguez, 135 S. Ct. at 1615–16; Whitfield v. State, 33 So. 3d 787, 792 (Fla. 5th DCA 2010). Nonetheless, the subsequent findings and conclusions in the trial court's order, supported by the images from the DVD, clarify that this "de minimus" comment was not the basis for the denial of Vangansbeke's motion to suppress. The remainder of the order explains that the stop was not unnecessarily prolonged, even for a de minimus period.

We emphasize the unique circumstances of this case. The combination of four individuals in the vehicle, along with the officers' lack of access to a computer, necessitated by the work of the tactical unit, resulted in an approximately twenty-minute delay from the initial stop to the beginning of the dog-sniff. Despite the length of the stop, the record shows that the officers were scrupulous in performing their duties and did not act to prolong the encounter. Accordingly, we affirm.

AFFIRMED.

SAWAYA and EDWARDS, JJ., concur.
COHEN, C.J., concurs, and concurs specially, with opinion.

5

COHEN, C.J., concurring specially.

I am in agreement with the majority opinion. I write separately to emphasize the importance of trial courts conducting a thorough, fact-intensive review of traffic stops to ensure that the principles of Rodriquez are honored. The nature of these stops, which often involve complicated, fact-specific determinations, makes it inappropriate to formulate a precise time limit for issuing a citation or warning. Yet open-ended standards can lead to abuse. Officers must not be allowed to unnecessarily prolong stops involving citizens suspected of nothing more than traffic violations.