IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

TIMOTHY EUGENE BURNETT,

       Appellant,

v.                                                                                    Case No. 5D16-2615

STATE OF FLORIDA,

       Appellee.

_____/

Opinion filed May 4, 2018

Appeal from the Circuit Court
for Orange County,
Renee A. Roche, Judge.

James S. Purdy, Public Defender, and
Kevin R. Holtz, Assistant Public Defender,
Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Lori N. Hagan, Assistant
Attorney General, Daytona Beach, for
Appellee.


EISNAUGLE, J.

      Appellant, Timothy Eugene Burnett, appeals his judgments and sentences in two

cases, contending that the trial court erred in denying his dispositive motions to suppress

a firearm discovered during a *Terry*[1] stop and frisk.  We agree and reverse, concluding that the officer did not have reasonable suspicion of illegal activity to justify a *Terry* stop.

### *The Terry Stop and Arrest in this Case*

Appellant was arrested for possession of a firearm by a convicted felon while he was still on probation for a prior offense, and as a result, was charged with both a new law violation and a violation of his probation.  Prior to entering a plea in both cases, Appellant moved to suppress the firearm, arguing that the arresting officer did not have reasonable suspicion to conduct a *Terry* stop.

The trial court held an evidentiary hearing where the arresting officer testified that a restaurant employee called in a tip that a customer appeared to have a gun in his waistband, but the employee "didn't know exactly what it was."  The employee did not actually see a firearm, nor does the record indicate that Appellant removed or displayed a firearm in any way.

The officer responded and identified Appellant in the parking lot as the individual described by the employee.  While Appellant was on his phone and standing next to his car, the officer approached and observed a "bulge" in Appellant's clothing.  Believing the bulge to be a concealed firearm, the officer "began to pat [Appellant] down, at which point [Appellant] moved away and tensed up."

Upon conducting the pat-down, the officer immediately knew that the bulge was a firearm, but only determined that Appellant was a felon after the stop and frisk was completed.  Likewise, the officer did not know if Appellant had a concealed weapons

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

permit before conducting the *Terry* stop, and conceded that he did not observe any illegal conduct. The trial court denied Appellant's motions, and this appeal follows.

### *Standard of Review*

"[A] trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness." *Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002). The trial court's factual findings "will be upheld if supported by competent, substantial evidence, while the court's legal determinations are reviewed de novo." *Vangansbeke v. State*, 223 So. 3d 384, 386 (Fla. 5th DCA 2017).

### *The Fourth Amendment: Terry and Suspicion of a Concealed Firearm*

The Fourth Amendment guarantees the right of the people to be free from unreasonable searches and seizures. Amend. IV, U.S. Const.; *see Terry*, 392 U.S. at 8. When evaluating the reasonableness of a stop and frisk, as occurred in this case, we apply the two-pronged test adopted by the United States Supreme Court in *Terry*. *Terry*, 392 U.S. at 15, 30–31.

First, *Terry* established that, in order to conduct an investigatory stop consistent with the Fourth Amendment, law enforcement must have a reasonable suspicion that "criminal activity may be afoot." *Id.* at 30; *see also Saturnino-Boudet v. State*, 682 So. 2d 188, 191 (Fla. 3d DCA 1996) ("A *Terry* stop is permissible if the detention is temporary and reasonable under the circumstances and only if the police officer has a wellfounded suspicion that the individual detained has committed, is committing, or is about to commit a crime." (citing *Terry*, 392 U.S. at 30; *Reynolds v. State*, 592 So. 2d 1082 (Fla. 1992))). Reasonable suspicion must be based on "specific and articulable facts" and not on "inchoate" "unparticularized suspicion" or mere "hunch." *Terry*, 392 U.S. at 21, 27; *see*

3

*Price v. State*, 120 So. 3d 198, 200 (Fla. 5th DCA 2013). The required "reasonable suspicion of criminal activity may result from viewing exclusively legal activity, but it depends upon the totality of the circumstances." *Regalado v. State*, 25 So. 3d 600, 604 (Fla. 4th DCA 2009).

"Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009); *see Terry*, 392 U.S. at 30–31.

Appellant asserts that the stop and frisk in this case was constitutionally invalid under *Terry*'s first prong. Specifically, he argues that carrying a concealed firearm is not sufficient, without more, to justify a *Terry* stop, relying on the fourth district's decision in *Regalado* and the second district's decision in *Slydell v. State*, 43 Fla. L. Weekly D594 (Fla. 2d DCA Mar. 14, 2018). We agree.

In *Regalado*, the court held that concealed possession of a firearm alone does not give rise to reasonable suspicion of criminal activity. 25 So. 3d at 606. In that case, the state argued that officers may conduct a valid *Terry* stop where they observe, without more, a bulge in the defendant's clothing resembling a gun. *Id.* at 604. In rejecting the state's argument, the court reasoned:

> Possession of a gun is not illegal in Florida. Even if it is concealed, it is not illegal if the carrier has obtained a concealed weapons permit. Although the officer observed a bulge in [the defendant's] waistband, which in his experience looked like a gun, no facts and circumstances were presented to show that [the defendant's] carrying of a concealed weapon was without a permit and thus illegal.

*Id.* Importantly, the *Regalado* court emphasized that the "tipster had not reported any illegal activity, and the officer observed no conduct which would constitute a crime or impending crime." *Id.*

More recently, in *Slydell*, the second district embraced the holding in *Regalado*. In that case, officers received a report from a confidential informant that the defendant was carrying a concealed firearm. 43 Fla. L. Weekly at D594. The officers located the defendant and observed a bulge in his pocket. *Id.* Based on this observation and the informant's tip, the officers searched him, found the firearm, and made an arrest. *Id.* Other than observation of a bulge in the defendant's clothing, the officers did not see any suspicious behavior, nor did they know that the defendant was a felon before the search. *Id.*

The defendant sought to suppress the firearm, arguing that it is legal to carry a concealed weapon in Florida with a permit, and that the officers therefore did not have reasonable suspicion of criminal activity. *Id.* The trial court denied the motion. *Id.* On appeal, the second district reversed, concluding that the officers did not have reasonable suspicion to conduct a *Terry* stop because they "did not observe any conduct that would constitute a crime or impending crime, they did not know [the defendant] was a felon," and "[w]hether [the defendant] had a concealed weapons permit, was 'a fact that an officer cannot glean by mere observation.'" *Id.* at D595 (quoting *Regalado*, 25 So. 3d at 606).

Despite the decisions of our sister courts in *Regalado* and *Slydell*, the State maintains that mere suspicion of a concealed firearm is enough to support a *Terry* stop, citing the Florida Supreme Court's decision in *Mackey v. State*, 124 So. 3d 176 (Fla. 2013). The State's reliance on *Mackey*, however, is misplaced.

In *Mackey*, the Florida Supreme Court considered whether a police officer had reasonable suspicion to conduct a *Terry* stop based on a belief that the defendant was carrying a concealed firearm. While on patrol in an area known for illegal firearms and narcotics, the officer in that case observed a bulge in the defendant's pocket with "a piece of the handle sticking out." 124 So. 3d at 179. Based on that observation and his training and experience, the officer identified the object as a firearm. *Id.* The officer approached the defendant and asked if he had anything on him, and the defendant said "no." *Id.* Knowing that was a lie, the officer patted the defendant down, retrieved the firearm, and arrested him for illegally carrying a concealed firearm. *Id.*

The defendant moved to suppress the evidence, arguing, in part, that the officer lacked a reasonable suspicion to conduct a *Terry* stop. *Id.* at 179–80. After the trial court denied his motion to suppress, he pled guilty and appealed the denial of his motion. *Id.* at 180. The third district affirmed, holding the officer's suspicion that the defendant was carrying a concealed firearm was by itself sufficient to justify a *Terry* stop and frisk, and certified conflict with *Regalado*. *Id.* at 181.

On review, the supreme court affirmed but disagreed with the third district's reasoning. Rather than basing its decision on the defendant carrying a concealed firearm, the court instead considered the totality of the circumstances, and explained:

> When the person blatantly lied to the police officer here about possession of a firearm while he was in a geographic area well known for illegal narcotics and firearms with the weapon in view, we conclude that the officer had a reasonable, articulable suspicion that the person may have been engaged in illegal activity, and this brief detention to further investigate whether a crime was being committed is constitutionally valid.

6

*Id.* at 184. Thus, contrary to the State's argument, *Mackey* supports the proposition that, consistent with *Regalado* and *Slydell*, something more than suspicion of a concealed firearm is required to validate a *Terry* stop.

### *The Constitutionality of the Stop in this Case*

In this case, the tipster did not see Appellant brandish or improperly display the firearm. Likewise, the arresting officer conceded that he did not see any illegal or threatening activity and did not know Appellant was a convicted felon. Appellant was not prowling or casing an establishment as in *Terry*. Unlike in *Mackey*, he did not lie to the investigating officer, and there is no record evidence that the stop occurred in a high-crime area known for drugs or illegal weapons. *See Mackey*, 124 So. 3d at 184–85. The officer here did not testify that Appellant fled or otherwise acted suspiciously upon seeing law enforcement. In fact, the State cites to no evidence in the record, and we have found none, that the tipster or officer observed any furtive behavior at all.

Although we acknowledge that a *Terry* stop can be based upon an observation of entirely legal activity,[2] there must be something about the circumstances, when considered in total, that reasonably raises a suspicion that a crime has been or is being committed. Indeed, reasonable suspicion could be based on the totality of any number of factual circumstances too numerous to catalog here. However, there is no such evidence in this record. Thus, given the law in Florida, and consistent with *Mackey*, *Regalado*, and *Slydell*, we hold that possession of a concealed firearm, without more, does not justify a *Terry* stop. We therefore reverse and remand with instructions for the trial court to vacate Appellant's convictions and sentences and reinstate his probation.

---

[2] *Regalado*, 25 So. 3d at 604.

7

REVERSED and REMANDED.

PALMER and WALLIS, JJ., concur.